## UNITED STATES DISTRICT COURT
## SOUTHERN DISTICT OF OHIO
## WESTERN DIVISION

JAMES SULLIVAN,
     Plaintiff

    vs.

HAMILTON COUNTY COMMON
PLEAS COURT, *et al.*,
    Defendants.

Case No. 1:22-cv-763
McFarland, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Pro se plaintiff James Sullivan brings this civil action against numerous Hamilton County judges and officials, some of whom have been dismissed by a previous Order of this Court (*see* Doc. 51), alleging state and federal claims related to a January 15, 2021 incident at the Hamilton County Courthouse (Courthouse) (*see* Doc. 3).  This matter is before the Court on defendants Sheriff Charmaine McGuffey, Lieutenant Dennis Grogan, Sergeant Michael Dreyer, Deputy Madison Speer, Deputy Nick Hrnyak, Deputy Frederick Ober, and Bailiff Laura Hayslip's (the County Defendants') motion for summary judgment (Doc. 49); plaintiff's two-part response (Docs. 52, 53), and the County Defendants' reply (Doc. 58).

### I.  Background

As summarized in this Court's prior Order and Report and Recommendation, plaintiff's complaint (Doc. 3) alleges that he and a man identified as Mr. Gipson entered the Hamilton County Courthouse on January 15, 2021.  (*See* Doc. 41 at PAGEID 1893-94).  According to plaintiff, the County Defendants detained him, told him he could not record at the Courthouse with an electronic device based on a Hamilton County Court of Common Pleas Rule,[1] and took

---

[1] This Rule, Rule 33(C)(5)(d) (hereafter "Rule 33"), was renumbered effective March 1, 2023 to Rule 33(E)(4) but is otherwise identical.  *See Common Pleas Local Rules*, HAMILTON COUNTY COURTS, *available at* https://hamiltoncountycourts.org/index.php/local-rules/ (last visited August 29, 2023) [https://perma.cc/4GP6-T9ZC].  It reads:

him before Judge Ruehlman, who improperly found him in contempt of court. (*Id.*). Plaintiff alleges that these actions violated his First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendment rights; 42 U.S.C. § 1985; the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*; and Ohio law. (*Id.* at PAGEID 1894).

The County Defendants argue that all claims against them should be dismissed. They support their motion with copies of the two Hamilton County Court of Common Pleas entries reflecting plaintiff's contempt convictions (Doc. 49-1); the disposition of plaintiff's appeal to Ohio's First District Court of Appeals (Doc. 49-2); and the declarations of defendants Speer, Brogan, Dreyer, Ober, Hayslip, and Hrnyak (Docs. 49-3 to 49-8). A copy of Rule 33 as it was in effect on January 15, 2021 is attached to defendant Brogan's declaration. (Doc. 49-4 at PAGEID 2629-32). A copy of the transcript of the January 15, 2021 contempt proceedings is attached to defendant Speer's declaration. (Doc. 49-3 at PAGEID 2604-24). In it, Judge Robert Ruehlman first found plaintiff in contempt of court for yelling and causing a disruption in the courthouse. (Doc. 49-3 at PAGEID 2616). Judge Ruehlman found plaintiff in contempt of court a second time after defendant Ober reported to Judge Ruehlman that he found a recording device on plaintiff during booking. (*Id.* at PAGEID 2622).

In defendant Speer's declaration, she states that she was working the main entrance security checkpoint at the Courthouse on January 15, 2021 and screened plaintiff. (Doc. 49-3,

---

**(4)** Except when expressly permitted by a Hamilton County Judge under this Rule, or Local Rule 30, electronic devices shall not be used within any area of the Courthouse, including designated areas, to:

    **(a)** Take or record a photograph, video or other visual image, or;

    **(b)** Record, transmit or receive audio or sound.

*Id.* Hamilton County Court of Common Pleas Rule 30, in turn, governs media coverage of court proceedings. *See id.*

PAGEID 2601-02 at ¶¶ 11-12, 14). She further states that she observed Mr. Gipson filming plaintiff, brought to their attention the recently changed Rule 33 prohibiting recording, radioed her supervisor to speak with plaintiff, and asked plaintiff to wait for her supervisor to arrive. (*Id.*, PAGEID 2602 at ¶¶ 15-19). Defendant Speer states that she did not detain or restrain plaintiff at any time during their encounter. (*Id.* at ¶ 20). Defendant Speer did not interact with plaintiff again until Judge Ruehlman ordered her to testify during plaintiff's contempt proceedings. (*Id.*, PAGEID 2602-03 at ¶¶ 24 and 26).

In defendant Brogan's declaration, he states that he was called down by defendant Speer regarding Mr. Gipson's recording. (Doc. 49-4, PAGEID 2627 at ¶ 15 and 17). He further states that he tried to explain Rule 33 to plaintiff, obtained a hard copy of the Rule for plaintiff, and plaintiff voluntarily accompanied him and defendants Dreyer and Hrnyak around the Courthouse to locate a judge that could explain the Rule to plaintiff—ultimately locating Judge Ruehlman. (*Id.*, PAGEID 2627-28 at ¶¶ 18-26, 28-29). Defendant Brogan states that he did not detain plaintiff or consider him to be in custody. (*Id.*, PAGEID 2627 at ¶ 22).

Defendant Hrnyak's declaration mirrors the sequence of events described by defendants Speer and Brogan, adding that he received the initial call from defendant Speer regarding Mr. Gipson's recording and arrived at the security checkpoint prior to defendant Brogan taking command as the ranking supervisor. (Doc. 49-8 at PAGEID 2642-43). Defendant Dreyer's declaration also mirrors those of defendants Speer and Brogan, including that no one handcuffed, arrested, detained, or placed plaintiff in custody. (*See* Doc. 49-5, PAGEID 2634 at ¶ 25). Defendant Dreyer further admits to a "brief but heated verbal exchange" with plaintiff during which both parties "raised [their] voices[,]" but he states that he nevertheless did not arrest or detain plaintiff prior to Judge Ruehlman's contempt rulings. (*Id.*, PAGEID 2635 at ¶¶ 30-32).

In defendant Ober's declaration, he states that he placed plaintiff in handcuffs following Judge Ruehlman's first contempt ruling, transported him to the Hamilton County Justice Center, and conducted a search, during which he found a hidden body camera.  (Doc. 49-6, PAGEID 2638 at ¶¶ 8-10).  Defendant Ober returned to the Courthouse and reported this discovery to Judge Ruehlman.  (*Id.* at ¶ 11).

In defendant Hayslip's declaration, she describes her job duties as performing administrative tasks on behalf of Judge Ruehlman, maintaining order in his courtroom, and enforcing his rules.  (Doc. 49-7, PAGEID 2639 at ¶¶ 3-4).  One such rule required defendant Hayslip to collect cellular phones of non-lawyers and non-law enforcement officers that entered Judge Ruehlman's courtroom, distribute associated claim tickets, and put the phones next to Judge Ruehlman's bench.  (*Id.*, PAGEID 2639-40 at ¶¶ 5-8).  Defendant Hayslip states that all of her actions on January 15, 2021 were "at the direction or on behalf of" Judge Ruehlman.  (*Id.*, PAGEID 2640 at ¶ 9).

The evidentiary support for plaintiff's opposition is limited.  Plaintiff's complaint appears to be notarized but does not indicate that it was "sworn to by the affiant[,]" *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 475 (6th Cir. 2002) (discussing the definition of an affidavit); rather, the notary indicates that he "was visited by a man properly identified or known to me to be James Edward Sullivan and he did establish this record before me and sign it of the purposes stipulated herein. . . ."  (Doc. 3 at PAGEID 109).  Because plaintiff did not swear an oath[2] before the notary or otherwise make a declaration[3] as to the truth of his allegations, the Court cannot consider

---

[2] *Swear*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("2. To take an oath."); *oath*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("1. . . .  The legal effect of an oath is to subject the person to penalties for perjury if the testimony is false.").

[3] An unsworn "declaration must comport to the following form: 'I declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.  Executed on (date).'"  *Peters*, 285 F.3d at 475 (quoting 28 U.S.C. § 1746(2)).

plaintiff's complaint as evidence rebutting the County Defendants' motion.  *See* Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to affidavits or declarations . . . .").

The first part of plaintiff's response includes a notary block partway through the filing, which is dated May 24, 2023—approximately three months prior to the date of the filing.  (*See* Doc. 52 at PAGEID 2669).  On the last page of this filing, plaintiff attempts to verify the balance of the document with a contemporaneous declaration that does not conform to the requirements of 28 U.S.C. § 1746.  (*See* Doc. 52 at PAGEID 2681 (no indication that plaintiff's statements were made under penalty of perjury)).  The second part of plaintiff's response also includes a notary block partway through the filing (*see* Doc. 53 at PAGEID 2694)—this one dated the day before his filing.  Again, on the last page of the second part of plaintiff's response, plaintiff attempts to verify the balance of the document with a contemporaneous declaration that does not conform to the requirements of 28 U.S.C. § 1746.  (*See* Doc. 53 at PAGEID 2712 (no indication that plaintiff's statements were made under penalty of perjury)).

A week following the submission of plaintiff's opposition, he submitted two more documents: "Affidavit of James Sullivan Denial of Court Services 06/05/20" and "Affidavit of J Sullivan and Dr[e]yer Blocks ADA Access 12/03/2020[.]"  (Docs. 55, 56).  Neither document is notarized nor conforms to the requirements of 28 U.S.C. § 1746.  (*See* Doc. 55 at PAGEID 2727 (no indication that the statements were made under penalty of perjury); Doc. 56 at PAGEID 2733 (undated)).  As such, these filings are not evidentiary material that may be used to rebut the County Defendants' motion.

Approximately one month following these "Affidavits" and after the County Defendants filed their reply, plaintiff proffered another series of documents.  (*See* Docs. 60-67).  This

continued supplementation of plaintiff's briefing after the filing of the County Defendants' reply memorandum violates the local rules of this Court.  *See* S.D. Ohio Civ. R. 7.2(a)(2) (only a response and reply memoranda are allowed absent "leave of court for good cause shown"), (d) (evidence related to a motion is due upon submission of "the primary memorandum of the party relying upon such evidence"), and (e) (evidence in opposition to a motion "shall be attached to the memorandum or included in an appendix thereto").  Thus, the Court does not consider these documents (Docs. 60-67).

## II.  Summary Judgment Standard

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A grant of summary judgment is proper unless the nonmoving party "establish[es] genuinely disputed material facts by 'citing to particular parts of materials in the record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine dispute.'"  *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 403 (6th Cir. 2019) (quoting Fed. R. Civ. P. 56(c)(1)).  The Court must evaluate the evidence, and all inferences drawn therefrom, in the light most favorable to the non-moving party.  *Satterfield v. Tennessee*, 295 F.3d 611, 615 (6th Cir. 2002); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*, 475 U.S. 574, 587 (1986*); Little Caesar Enters., Inc. v. OPPC, LLC*, 219 F.3d 547, 551 (6th Cir. 2000).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial.  *Anderson*, 477 U.S. at 249.  The trial court need not search the entire record for material issues of fact, *Street v. J.C.*

*Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989), but must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Because plaintiff is a pro se litigant, his filings are liberally construed. *Spotts v. United States*, 429 F.3d 248, 250 (6th Cir. 2005); *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir. 1999) (pro se plaintiffs enjoy the benefit of a liberal construction of their pleadings and filings). However, a party's status as a pro se litigant does not alter the party's duty on a summary judgment motion to support his factual assertions with admissible evidence. *Maston v. Montgomery Cnty. Jail Med. Staff Pers.*, 832 F. Supp. 2d 846, 851-52 (S.D. Ohio 2011) (citing *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010)).

## III.    Analysis

The County Defendants argue that they are shielded by several types of immunity from plaintiff's claims against them, and that the Hamilton County Sheriff's Office, in particular, may not be sued. The Court begins with the latter argument.

### A.  Hamilton County Sheriff's Office

The County Defendants argue that Ohio counties are not *sui juris* and that it is redundant to name both the Hamilton County Sheriff's Office and Charmaine McGuffey in her official

capacity[4] as defendants. Plaintiff does not offer a cogent response to this argument. The Court agrees that the Hamilton County Sheriff's Office is not *sui juris*. *See* Fed. R. Civ. P. 17(b)(3) (Ohio law determines a non-individual, non-corporate defendant's capacity to be sued); *Carmichael v. City of Cleveland*, 571 F. App'x 426, 435 (6th Cir. 2014) ("[U]nder Ohio law, a county sheriff's office is not a legal entity that is capable of being sued.") (citations omitted). Plaintiff's claims should be dismissed as to the Hamilton County Sheriff's Office.

B. Quasi-judicial and qualified immunity

The County Defendants argue that they are entitled to quasi-judicial immunity because, during their interactions with plaintiff on January 15, 2021, they were "performing as courthouse security and working at the direction of the court in the enforcement of the court's local rules" or, in the case of defendant Hayslip, "working for Judge Ruehlman directly. . . ." (Doc. 49 at PAGEID 2580). They otherwise argue that all of the County Defendants are entitled to qualified immunity.

Absolute quasi-judicial immunity flows from the "long-recognized common-law doctrine" of judicial immunity, which "shield[s] judges from collateral attacks challenging a judge's actions taken in her official judicial capacity." *Morgan v. Bd. of Pro. Resp. of the Supreme Ct. of Tenn.*, 63 F.4th 510, 518 (6th Cir. 2023). "[T]hose persons performing tasks so integral or intertwined with the judicial process that these persons are considered an arm of the judicial officer" are entitled to absolute quasi-judicial immunity. *Id.* (quoting *Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994)). Courts are to look at "the nature of the function performed, not

---

[4] Despite making general references to suing "each Defendant in his / her individual capacity," (Doc. 3 at PAGEID 92), plaintiff's complaint does not describe any specific actions taken by defendant McGuffey related to his claims and elsewhere acknowledges that he sues her only in an official capacity (*see* Doc. 3 at PAGEID 87 (alleging that she, "at all relevant times . . . operates in her official capacity.")).

the identity of the actor who performed it" to determine whether quasi-judicial immunity applies. *Id.* (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)).

"Qualified immunity protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known." *Brown v. Lewis*, 779 F.3d 401, 411 (6th Cir. 2015) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (2006)). Thus, when a defendant raises qualified immunity, the plaintiff must show that (1) "a constitutional violation has occurred" and (2) "the violation involved a clearly established constitutional right of which a reasonable person would have known." *Id.* (citing *Sample v. Bailey*, 409 F.3d 689, 695-96 (6th Cir. 2005)). The Court may consider these elements in any order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "[T]o impose individual liability upon a [state official] for engaging in unconstitutional misconduct, it is a plaintiff's burden to specifically link the [official]'s involvement to the constitutional infirmity. . . ." *Burley v. Gagacki*, 834 F.3d 606, 615 (6th Cir. 2016). *See also Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) ("Merely listing names in the caption of the complaint and alleging constitutional violations in the body of the complaint is not enough to sustain recovery under § 1983.").

It is clear that "enforcing or executing a court order is intrinsically associated with a judicial proceeding" and invokes quasi-judicial immunity. *Bush*, 38 F.3d at 847. Performance of courthouse security,[5] however, is not clearly deserving of judicial immunity. In *McPherson v.*

---

[5] In addition to its recording prohibition, Rule 33 also states:

> For purposes of these Local Rules, court security officers are individuals employed to perform security duties at the Courthouse, including Hamilton County Sheriff Deputies and the Criminal Bailiffs assigned to Municipal Court. Court security officers are deemed by the Court to be officers of the Court they serve when acting in their official capacity as court security officers in enforcing this and other Local Rules.

Hamilton Cnty. Common Pleas Court R. 33(C)(2), *Common Pleas Local Rules*, HAMILTON COUNTY COURTS,

*Kelsey*, the defendants argued that courthouse security was a "judicial function . . . commonly delegated to court security officers."  125 F.3d 989, 992 (6th Cir. 1997).  The Sixth Circuit found the question a "close" one and ultimately did not decide it—given that its qualified immunity analysis was dispositive.  *Id.* at 993.  Here, the declarations proffered by the County Defendants clearly demonstrate that they were engaged in courthouse security and administrative functions during their interactions with plaintiff.  The extent to which their interactions with plaintiff derived from functions that are judicial in nature, however, is less clear.  *See id.*  The Court therefore begins with qualified immunity, which is dispositive on most of plaintiff's claims.

    1. *First Amendment*

As best the Court can decipher, plaintiff's First Amendment claim against the County Defendants derives from their enforcement of Rule 33's recording prohibition.[6]  (*See* Doc. 3 at PAGEID 92-93).  The County Defendants argue that it is undisputed that they did not unilaterally restrict plaintiff's speech but rather simply enforced the Hamilton County Court of Common Pleas' local rule.  Plaintiff does not offer a cogent response to this argument.

"In a limited public forum, the government 'is not required to and does not allow persons to engage in every type of speech.'"  *Enoch v. Hamilton Cnty. Sheriff's Off.*, 818 F. App'x 398, 405 (6th Cir. 2020) (quoting *Hartman v. Thompson*, 931 F.3d 471, 479 (6th Cir. 2019)).[7]  "When public officials implement validly enacted state laws that no court has invalidated, their conduct

---

*available at* https://hamiltoncountycourts.org/index.php/local-rules/ (last visited August 29, 2023) [https://perma.cc/4GP6-T9ZC].

[6] Plaintiff argues that the recording prohibition referenced by the County Defendants (Rule 33(C)(5)(d)) was not in effect on January 15, 2021.  (*See* Doc. 53 at PAGEID 2685, mistakenly referring to "1/15/20*20*" (emphasis added)).  Even if this were the case, however, the prior version of the Rule 33 proffered by plaintiff also includes a recording prohibition.  (*See* Doc. 66 at PAGEID 2967 ("[T]he operation of any . . . sound or image recording . . . device is prohibited in any courtroom or hearing room,  . . . judge's chambers or ancillary area (to be determined in the sole discretion of the Court) without the express permission of the Court.")).

[7] As in *Enoch*, the parties do not appear to dispute that the hallways outside courtrooms in the Courthouse are a limited public forum.

10

typically satisfies the core [qualified immunity] inquiry—the 'objective reasonableness of an official's conduct'—that the immunity doctrine was designed to test." *Id.* at 405 (alteration in original) (quoting *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440-41 (6th Cir. 2016) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982))).  *See also id.* (quoting *Hartman*, 931 F.3d at 479) ("The government may restrict speech so long as the restrictions are viewpoint neutral and 'reasonable in the light of the purpose to be served by the forum.'") (internal quotations omitted).  In *Enoch*, the Sixth Circuit held that sheriff's deputies enjoyed qualified immunity against First Amendment claims related to their enforcement of a prior version of Rule 33, which also included a recording prohibition (*see* Doc. 66).  *See id.* at 400, 405.

      The County Defendants have presented the declarations of defendants Speer, Hrnyak, Dreyer, and Brogan, which demonstrate that they stopped plaintiff from recording in the Courthouse as a function of their enforcement of Rule 33.  (*See* Doc. 49-3, PAGEID 2602 at ¶ 16; Doc. 49-8, PAGEID 2643 at ¶ 17; Doc. 49-5, PAGEID 2634 at ¶ 21; and Doc. 49-4 at PAGEID 2627 at ¶ 18).  *See Enoch*, 818 F. App'x 405.  Plaintiff even appears to concede as much (*see* Doc. 52, PAGEID 2660 at ¶ 24 ("[Defendants] Hrnyak, Brogan and Dreyer did not become involved until [defendant] Speer attempted to enforce [Rule 33].")), but he asserts that Rule 33 was invalid (*see* Doc. 53, PAGEID 2683 at ¶ 35 ("[T]he so called 'NEW RULE' was not presented before the joint session and the act is therefore void.").  Even though this statement appears to have been notarized (as it precedes the notary block in the second part of plaintiff's response (*see id.* at PAGEID 2694), it is a legal conclusion and not competent summary judgment evidence.  *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion *must be made on personal knowledge*, set out facts that would be admissible in

evidence, and show that the affiant or declarant is *competent to testify on the matters stated*.")
(emphasis added).

Defendant Hayslip's declaration similarly demonstrates that any action taken by her
towards plaintiff on the date of the incident at issue was directly pursuant to Judge Ruehlman's
courtroom rules.  (*See* Doc. 49-7, PAGEID 2639-40 at ¶¶ 5, 9).  Plaintiff offers no cogent
argument or evidence demonstrating that any such rule was invalid or any such restriction was
unreasonable or not viewpoint neutral.  Finally, defendant Ober's declaration demonstrates that
his actions towards plaintiff on the date of the incident at issue were directly pursuant to Judge
Ruehlman's order finding plaintiff in contempt of court and his enforcement of Rule 33.  (*See*
Doc. 49-6, PAGEID 2638 at ¶¶ 8-13).  *See Rieves v. Town of Smyrna, Tenn.*, 959 F.3d 678, 697
(6th Cir. 2020) ("[A]n official is protected by absolute quasi-judicial immunity when he acts
pursuant to a *valid* court order. . . .").  Plaintiff did not appeal his contempt convictions and
offers no evidence to rebut their validity.  (*See* Doc. 49-1 (contempt convictions) and Doc. 49-2
(state court appellate decision finding that plaintiff did not appeal the contempt convictions)).

For the foregoing reasons, the County Defendants are entitled to qualified immunity on
Count I of plaintiff's complaint.  Defendant Ober is also entitled to quasi-judicial immunity to
the extent his actions were taken pursuant to Judge Ruehlman's valid order finding plaintiff in
contempt of court.

### 2. *Fourth Amendment*

Plaintiff's complaint references several Fourth Amendment claims.  (*See* Doc. 3,
PAGEID 93 at ¶ 36 (Count II) ("searching and seizing" plaintiff and his electronic device
without "a warrant, probable cause or any legal justification"); PAGEID 94 at ¶ 39 (Count III)

("warrantless arrest and continued detention . . . unsupported by probable cause"); and PAGEID 95 at ¶ 46 (Count V) (malicious prosecution)).

As explained in its prior Order and Report and Recommendation, the Court understands plaintiff's first Fourth Amendment claim in Count II to refer to a search and seizure that allegedly occurred just after his routine security check upon entering the Courthouse.[8] (*See* Doc. 41 at PAGEID 1908). The County Defendants rely on defendants Hrnyak, Brogan, and Dreyer's declarations to demonstrate that plaintiff accompanied them voluntarily to find a judge in the Courthouse to explain Rule 33's recording prohibition. (*See* Doc. 49-4, PAGEID 2627 at ¶¶ 21-22; Doc. 49-5, PAGEID 2634 at ¶¶ 23-25; Doc. 49-8, PAGEID 2643 at ¶¶ 22-24; *see also* Doc. 49-3, PAGEID 2602 at ¶¶ 19-20 (Defendant Speer states she told plaintiff she was not detaining him and did not place him in custody or otherwise restrain him)). The County Defendants also note that plaintiff's *own exhibit* offered in support of his objections to this Court's previous Order and Report and Recommendation is consistent with their declarations on this point. (*See, e.g.*, Doc. 44-1 at PAGEID 2406 ("[Defendant Brogan]: . . . We will take you up in front of [J]udge L[u]ebbers and she will take care of it, you can talk to her. [Plaintiff]: *Let's go see Luebbers. Come on*.") (emphasis added)). The County Defendants argue that the seizure of plaintiff's property occurred only after his contempt convictions and upon being booked into jail, and such a seizure does not violate the Fourth Amendment.

In his response, plaintiff relies on a single phrase in defendant Brogan's alleged statement—"we will take you" (Doc. 52 at PAGEID 2657)—to counter the County Defendants' position that plaintiff voluntarily accompanied them. (*See also* Doc. 53 at PAGEID 2685 (plaintiff objecting to the characterization of their encounter as "voluntary accompan[iment]. . .

---

[8] Plaintiff does not appear to challenge this initial, routine security check.

.")). Plaintiff's argument, however, is not "concrete evidence from which a reasonable juror could return a verdict in his favor. . . ." *Anderson*, 477 U.S. at 256. Moreover, plaintiff's position appears to rely on a statement *in one of plaintiff's own filings* that, when read in full context, actually supports the County Defendants' version of events. (*See* Doc. 44-1 at PAGEID 2414 ("Mr. Gipson: . . . [W]e came here voluntarily.")). Elsewhere in his response, plaintiff even recounts the following exchange: "[Defendant Dreyer]: . . . I have explained to you, if you wanna leave, you can leave. . . ." (Doc. 52 at PAGEID 2665). Plaintiff offers no evidence to support his characterization of this encounter.

The County Defendants have presented evidence that they did not search or seize plaintiff before Judge Ruehlman found plaintiff in contempt of court. Plaintiff fails to rebut this evidence with any evidence of his own demonstrating that he was illegally searched or seized prior to his appearance before Judge Ruehlman.[9] As such, plaintiff cannot show a constitutional violation, and defendants Speer, Hrnyak, Dreyer, and Brogan are entitled to qualified immunity on Count II of his complaint.

To the extent the Court were to construe Count II or any other Count in plaintiff's complaint as asserting an illegal seizure claim against defendant Hayslip or defendant Ober, these defendants are also entitled to qualified immunity. With respect to defendant Hayslip, plaintiff's complaint actually alleges that he "handed his cell phone . . . to Christopher Collini[,]" who is not a defendant to his lawsuit. (Doc. 3, PAGEID 97 at ¶ 50). In any event, as is clear from plaintiff's own transcript of the incident on January 15, 2021, defendant Hayslip explained to him that Judge Ruehlman had a generally applicable rule that cell phones must be turned over in exchange for a claim ticket while in his courtroom. (*See* Doc. 44-1 at PAGEID 2414-16). At

---

[9] Plaintiff explicitly admits that his property was not seized at this time. (*See* Doc. 52 at PAGEID 2655 ("[Plaintiff] had his devices in his pocket at all times[.]")).

14

this point, as explained above, there is no evidence to suggest that plaintiff was obliged to remain in Judge Ruehlman's courtroom or, by extension, turn over his cell phone.  When a plaintiff has turned over property "willingly[,]" that turnover "cannot form the basis for a claim that [the defendant] illegally seized [his] property." *Kent v. Gantt*, No. 2:13-cv-459, 2013 WL 5424710, at *5 (S.D. Ohio Sept. 26, 2013).

With respect to defendant Ober, he searched plaintiff and found a hidden body camera as he processed plaintiff into the Hamilton County Justice Center after plaintiff's contempt of court arrest.  (Doc. 49-6, PAGEID 2638 at ¶ 10).  "[I]t is well settled that police may take property into custody during a routine inventory search incident to arrest." *Payne v. Lowry*, No. 18-11154, 2019 WL 4316266, at *3 (E.D. Mich. Sept. 11, 2019) (citing *South Dakota v. Opperman*, 428 U.S. 364 (1976)).  Therefore, defendant Ober's seizure of plaintiff's body camera after arrest does not violate the Constitution.

Plaintiff has failed to present any evidence creating a genuine issue of material fact that defendants Hayslip or Ober unconstitutionally searched him or seized his property.  As such, these defendants are also entitled to qualified immunity on any such claim asserted in plaintiff's complaint.

Count III, although captioned as a conspiracy claim, appears to allege a false arrest claim against the County Defendants.  (*See* Doc. 3, PAGEID 94 at ¶ 39 ("[A] warrantless arrest and continued detention of a person unsupported by probable cause . . . violates rights protected by the Fourth . . . Amendment[]. . . .")).  "A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff." *Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020) (quoting *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005)).

The County Defendants argue that the only time plaintiff was seized on January 15, 2021 was pursuant to the execution of Judge Ruehlman's orders finding plaintiff in contempt of court. Plaintiff does not appear to respond to the County Defendants' argument. Instead, he recounts a conversation with defendants Dreyer and Hayslip about Judge Ruehlman's courtroom policy that cell phones be turned over while in chambers. (*See* Doc. 52 at PAGEID 2666-68).

As noted above, "an official is protected by absolute quasi-judicial immunity when he acts pursuant to a *valid* court order because 'enforcing or executing a court order is intrinsically associated with a judicial proceeding.'" *Rieves*, 959 F.3d at 697 (quoting *Cooper v. Parrish*, 203 F.3d 937, 948 (6th Cir. 2000)). Because plaintiff did not appeal his contempt convictions or proffer evidence to rebut their validity (*see* Doc. 49-1 (contempt convictions) and Doc. 49-2 (state court appellate decision finding that plaintiff did not appeal the contempt convictions)), the County Defendants are entitled to quasi-judicial immunity to the extent that this claim derives from any search or seizure related to the enforcement of his contempt convictions. Plaintiff has presented no evidence to suggest that he was seized at any other point on January 15, 2021. The County Defendants are therefore entitled to quasi-judicial immunity or qualified immunity on Count III of plaintiff's complaint.

With respect to Count V of plaintiff's complaint, the County Defendants argue that a successful malicious prosecution claim requires a criminal proceeding to have resulted in a plaintiff's favor. Plaintiff appears to argue in response that his contempt convictions are invalid. (*See* Doc. 53 at PAGEID 2683-84). Only plaintiff's "motion for the return of his property" was ultimately resolved in his favor; plaintiff did not appeal his contempt convictions. (*See* Doc. 49-2 at PAGEID 2595-96). Plaintiff's malicious prosecution claim therefore fails. *See Sykes v. Anderson*, 625 F.3d 294, 309 (6th Cir. 2010) (To state a Fourth Amendment malicious

prosecution claim, "the criminal proceeding must have been resolved in the plaintiff's favor.") (citation omitted). As such, the County Defendants are entitled to qualified immunity on Count V of plaintiff's complaint.

### 3. *Fifth, Sixth, Eighth, and Fourteenth Amendments*

Defendants argue that plaintiff makes "passing references" to violations of the Fifth, Sixth, Eighth, and Fourteenth Amendments with "no factual support. . . ." (Doc. 49 at PAGEID 2585). The Court agrees. (*See, e.g.*, Doc. 3, PAGEID 84 at ¶ 2; PAGEID 87 at ¶ 11; PAGEID 94 at ¶¶ 39-40; PAGEID 95 at ¶ 43; and PAGEID 99 at ¶ 55). Plaintiff offers no evidence that would allow "a rational trier of fact to find" in his favor. *Matsushita*, 475 U.S. at 587. Rather, plaintiff offers arguments that the Court cannot decipher.[10] Absent supporting factual allegations to support these constitutional claims, plaintiff cannot meet the first prong of the qualified-immunity analysis as to his Fifth, Sixth, Eighth, and Fourteenth Amendment claims against the County Defendants, and any such claims contained in his complaint should be dismissed.

As to plaintiff's Fourteenth Amendment claim in particular, which appears to relate to the return of his cell phone, the Court notes that plaintiff did allege in his complaint that he had a "court order to return [his] property" and that the property had not yet been returned as of the filing of his complaint. (Doc. 3, PAGEID 97 at ¶ 50). But plaintiff has not "plead[ed] and prove[d] that state remedies for redressing the wrong are inadequate." *Freeman v. Spoljaric*, ___ F. Supp. 3d ____, No. 1:22-cv-203, 2023 WL 2743764, at *6 (S.D. Ohio Mar. 31, 2023) (quoting *Vicory v. Walton*, 721 F.2d 1062, 1065-66 (6th Cir. 1983)). "If satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred

---

[10] Plaintiff states: "[Plaintiff] objects to councils' statement. c. Fifth, Sixth, Eighth, and Fourteenth Amendments (Counts 1,3, 4,5 and 8) And her logic is extremely hard to follow as the dryer Hayslip shows Speers, Brogan, Hrnyak, had Sullivan in detention for the crime of standing next to an African American when appointment alarm went off id see Dale Mikes Cellebrite report." (*See* Doc. 53 at PAGEID 2684).

despite the injury." *Jefferson v. Jefferson Cnty. Pub. Sch. Sys.*, 360 F.3d 583, 587-88 (6th Cir. 2004). A plaintiff "may not seek relief under [42 U.S.C. §] 1983 without first pleading and proving the inadequacy of state or administrative processes and remedies to redress [his] due process violations." *Id.* at 588. Plaintiff has failed to sufficiently plead that the post-deprivation tort remedies available to him under Ohio law are inadequate to adjudicate his property-loss claim. *See Fox v. Van Oosterum*, 176 F.3d 342, 349 (6th Cir. 1999) (citing *Hudson v. Palmer*, 468 U.S. 517, 534-36 (1984)) ("State tort remedies generally satisfy the postdeprivation process requirement of the Due Process Clauses."). In fact, plaintiff has offered no evidence at all regarding the status of state remedies. As such, the County Defendants are entitled to qualified immunity on plaintiff's Fourteenth Amendment claim.

> 4. *§ 1985*

The County Defendant argue that they are entitled to qualified immunity on plaintiff's § 1985 conspiracy claims because he has not sufficiently alleged the violation of any of his constitutional rights and the only allegations of his complaint even arguably related to a conspiracy (Count VI, *see* Doc. 3 at PAGEID 97) appear to relate only to Mr. Gipson and not plaintiff. In response, plaintiff references a conspiracy among certain of the County Defendants and others unsupported by a coherent argument. (*See* Doc. 52 at PAGEID 2661; Doc. 53 at PAGEID 2685-86).

Plaintiff cannot succeed on his § 1985 conspiracy claim because there is "no underlying constitutional violation that injured h[im]." *Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009). The County Defendants are therefore entitled to qualified immunity on Count VI of plaintiff's complaint.

> 5. *42 U.S.C. § 12203*

The County Defendants argue that plaintiff has provided no factual basis to support a claim that any of the County Defendants retaliated against him in opposition to an act or practice made unlawful by the ADA, or coerced, intimidated, interfered with, or threatened plaintiff in connection with his exercise or enjoyment of his ADA rights. *See* 42 U.S.C. §§ 12203(a) and (b).[11] In plaintiff's response, he seems to argue that Judge Ruehlman's courtroom rule that cell phones be turned over violated the ADA (*see* Doc. 52 at PAGEID 2665) and otherwise relies on two prior conversations with defendants Brogan and Dreyer in which those defendants mention "ramifications" for plaintiff (Doc. 53, PAGEID 2688 at ¶ 47).

Plaintiff's complaint contains two isolated references to "disability." (Doc. 3, PAGEID 84 at ¶ 3; PAGEID 85 at ¶ 5). Count IV ("Title 42 U.S.C. § 12203 retaliation and coercion") does not reference disability at all. (*Id.*, PAGEID 94-95 at ¶¶ 42-44). In Count VII ("ADA Act of 2011 (42 U.S.C. § 12203 Retaliation or coercion"), plaintiff alleges that "[defendant] Dr[e]yer did threaten [plaintiff] . . . on December 3rd 2020 trying to use services in the court"; and that "[defendant] Ruehlman, working with [defendant] Dr[e]yer . . . made his threats and put . . . [plaintiff] . . . in Jail . . . for exercising a right to use court services." (Doc. 3, PAGEID 98 at ¶ 52).

The only conceivable support for this claim is a purported transcript of a conversation between plaintiff and defendant Brogan from June 2020, in which they discuss the ADA,

---

[11] Under 42 U.S.C. § 12203(a) ("Retaliation"): "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." Under 42 U.S.C. § 12203(b) ("Interference, coercion, or intimidation"):

> It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter.

*Id.*

plaintiff's medical conditions, and plaintiff's service dog.  (*See* Doc. 53 at PAGEID 2695-2703).

This portion of the second part of plaintiff's response, however, is not competent evidence on

summary judgment because it appears *after* the notary block and before the ineffective 28 U.S.C.

§ 1746 language.  Even if this could be considered evidence, plaintiff fails to explain how it

supports a claim under 42 U.S.C. § 12203.  In addition, plaintiff's reference to defendants Dreyer

and Brogan threatening "ramifications" against him appears to come from the following

statement attributed to defendant Dreyer: "I have bent over backward for you, Mr. Sullivan. . . .

You cannot come in *and insult my officers* any way that you choose with no ramifications."

(Doc. 56 at PAGEID 2730 (emphasis added)).  As noted above, however, this document is

unsworn and unverified.  In any event, the statement does not relate to plaintiff's disability and

would not lead a rational juror to conclude that any of the County Defendants are liable under §

12203.  As such, the County Defendants are entitled to qualified immunity on Counts IV and VII

of plaintiff's complaint.  *See Bartell v. Lohiser*, 215 F.3d 550, 556 (6th Cir. 2000) ("[T]his

Circuit, as well as a number of our sister Circuits, have granted state employees qualified

immunity against ADA and Rehabilitation Act claims.").

    C.  Statutory immunity

    The County Defendants argue that they enjoy immunity from plaintiff's state law claims

in their individual or representative capacities under Ohio's Political Subdivision Tort Liability

Act (PSTLA), Ohio Rev. Code § 2744 *et seq.*  The County Defendants argue that on January 15,

2021, they each were performing governmental functions in good faith and within the scope of

their respective employments so as to preclude liability in their individual capacities.  They also

argue that no exceptions to Hamilton County's political subdivision immunity apply as it relates

to plaintiff's official-capacity claims.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)

(Official-capacity suits are generally "only another way of pleading an action against an entity of which an officer is an agent.") (quoting *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, n.55 (1978)).

Plaintiff's response to these arguments seems to be that the County Defendants were acting either outside of the scope of their employments or in a wanton, malicious, or bad-faith manner because certain County Defendants "agreed to commit the substantive racketeering offense through agreeing to participate in two racketeering acts. . . . ." (Doc. 52, PAGEID 2661 at ¶ 28). Plaintiff otherwise argues that "[f]abricating a new Rule without authority is not acting in good faith. . . ." (Doc. 53, PAGEID 2686 at ¶ 42). Plaintiff does not appear to address the County Defendants' argument related to Hamilton County's immunity under the PSTLA.

To determine whether a political subdivision enjoys immunity under the PSTLA, Ohio courts employ a three-tiered analysis. *Hortman v. Miamisburg*, 852 N.E.2d 716, 718 (Ohio 2006). Courts are to first examine whether the political subdivision falls within the general immunization from liability under Ohio Revised Code § 2744.02(A). *Id.* Courts are to next analyze whether an exception to immunity set out in Ohio Revised Code § 2744.02(B)(1)-(5) applies. *Id.* Finally, courts are to determine whether a defense under Ohio Revised Code § 2744.03 applies to reinstate immunity. *Id.*

Under the first tier, a "political subdivision" includes counties such as Hamilton County. *Id.* at § 2744.01(F). Under Ohio Rev. Code § 2744.02(A)(1):

> [T]he functions of political subdivisions are hereby classified as governmental functions and proprietary functions. . . . [A] political subdivision is not liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function.

*Id.* Hamilton County is therefore generally immune for purposes of the first tier.

Under the second tier, the first exception concerns the negligent operation of a motor vehicle and does not apply.  *See id.* at § 2744.02(B)(1).  The second exception concerns proprietary functions[12] and does not apply.  *See id.* at § 2744.02(B)(2).  The third exception concerns the negligent maintenance of public roads and does not apply.  *See id.* at § 2744.02(B)(3).  The fourth exception concerns negligence related to physical defects on or in public properties and does not apply.  *See id.* at § 2744.02(B)(4).  The fifth exception concerns instances in which an Ohio statute otherwise expressly imposes liability on a political subdivision and does not apply.  *See id.* at § 2744.02(B)(5).

Because Hamilton County does not lose its immunity pursuant to any of these exceptions, the third tier is not applicable.  Hamilton County, to the extent named by reference to any of the County Defendants in an official capacity (*see* Doc. 3, PAGEID 87 at ¶¶ 9-10), should be determined immune from the state law claims asserted in Counts VIII through XVI of plaintiff's complaint under the PSTLA.  *See Stillwagon v. City of Delaware*, 175 F. Supp. 3d 874, 907-08 (S.D. Ohio 2016) ("Ohio courts have held that political subdivisions are immune from intentional torts such as malicious prosecution. . . .") (citations omitted).

Under Ohio Revised Code § 2744.03(A)(6), immunity also applies to a political subdivision's employees except in three circumstances:

(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities;

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner;

(c) Civil liability is expressly imposed upon the employee by a section of the Revised Code.  Civil liability shall not be construed to exist under another section

---

[12] The definition of proprietary functions (Ohio Rev. Code § 2744.01(G)(1)(a)) excludes functions set forth in Ohio Revised Code § 2744.01(C)(2), including "[t]he provision or nonprovision of police . . . services or protection;" "[t]he power to preserve the peace . . . and to protect persons and property;" and "quasi-judicial functions. . . ." *Id.* at §§ 2744.01(C)(2)(a), (b), and (f).

of the Revised Code merely because that section imposes a responsibility or mandatory duty upon an employee, because that section provides for a criminal penalty, because of a general authorization in that section that an employee may sue and be sued, or because the section uses the term "shall" in a provision pertaining to an employee.

*Id.* at §§ 2744.03(A)(6)(a)-(c).

Nothing submitted by plaintiff in support of his response to the County Defendants' motion for summary judgment creates a genuine issues of material fact that the County Defendants took actions placing them within the ambit of Ohio Revised Code § 2744.03(A)(6)(a) or (b)—the only subsections invoked by plaintiff. In addition, as it relates to "[f]abricating a new Rule[,]" plaintiff references only dismissed judicial-officer defendants Ruehlman, Heekin, Nestor, and Luebbers and not any of the County Defendants. (Doc. 53 at PAGEID 2686). The County Defendants should be determined individually immune under the PSTLA from the state law claims asserted in Counts VIII through XVI of plaintiff's complaint.

## IT IS THEREFORE RECOMMENDED THAT:

1. The County Defendants' motion for summary judgment (Doc. 49) be **GRANTED** and that each of plaintiff's claims be dismissed against the County Defendants for the reasons explained herein.

Date: 10/24/2023

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTICT OF OHIO**
**WESTERN DIVISION**

JAMES SULLIVAN,                                                   Case No. 1:22-cv-763
          Plaintiff,                                             McFarland, J.
                                                                 Litkovitz, M.J.
          vs.

HAMILTON COUNTY COMMON
PLEAS COURT, et al.,
          Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), WITHIN 14 DAYS after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.  This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

WITHIN 14 DAYS after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140

(1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).