# IN THE UNITED STATES DISTRICT COURT FOR THE SIXTH CIRCUIT

McFarland, J.

Litkovitz, M.J.

## JAMES SULLIVAN,

### Petitioner-Appellant, Previous Brief 1:22-cv-763

v.

## HAMILTON COUNTY COURT OF COMMON PLEAS, et al.,

### Respondents -Appellees

**RESPONDENTS- CHARMAINE Mc GUFFEY, LIEUTENANT DENNIS BROGAN, SGT. MICHEAL DRYER, DEPUTY SPEERS, DEPUTY HNRYAK, DEPUTY. OBER. LARA HAYSLIP UNAUTHORIZED COUNTY (REMOTE DIVISON) ROBERT RUEHLMAN, THOMAS HEEKIN, JODY LUEBBERS, AND TERRENCE NESTOR Previous Brief (23-3734)**

**Objection response and reply brief to magistrate action inappropriate per Fed.R.Civ.P. 72(b),procedure motion to strike. On Appeal Southern District of Ohio, Western Division, Case No. 1:22-cv-763**

James Sullivan
Petitioner
3556 Wilson Ave.
Cincinnati Ohio
[45229]
88automate@gmail.com

Pamela J. Sears (0012552)
Assistant Prosecuting Attorney
HAMILTON COUNTY
PROSECUTOR'S OFFICE
230 E. Ninth Street, Suite 4000
Cincinnati, OH 45202
DDN: (513) 946-3082 (Sears)
pam.sears@hcpros.org

LINDA L. WOEBER (0039112)
COOPER D. BOWEN (0093054)
MONTGOMERY JONSON LLP
600 Vine Street, Suite 2650
Cincinnati, Ohio 45202
513.768.5239 / lwoeber@mojolaw.com
513.768.5242 / cbowen@mojolaw.com

I

**CASE NUMBER 1:22-cv-763**

**IN THE UNITED STATES DISTRICT COURT FOR THE SIXTH CIRCUIT**

NOW COMES James Sullivan, authorized Representative on behalf of JAMES SULLIVAN. Ens Legis. in Propria Persona, Sui Juris, and as one of the people of the United States, hereinafter referred to as the real party and interests, and in this court of record in the above-captioned matter, I James Sullivan under oath do hereby state and depose. And in compliance with 28 U.S. Code § 1746 "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date 12/ 09 /23

(Signature)". ⟨signature⟩, The magistrate statement is in fact a substitute for a notary oath. For and on the record All the deputies statements are RULE 60 fraud on the court. 28 U.S. Code § 1746 such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form: My statement is made on personal firsthand knowledge, and I am competent to do so. I have made this statement in the State of Ohio, in the County of Hamilton.

1. Rule 60(b)(3) allows a court to grant relief from a judgment for fraud, misrepresentation, or misconduct by an opposing party. " The 60(b)(3) motion, the movant must prove by clear and convincing evidence that an adverse party has obtained the verdict through fraud, misrepresentation, or other misconduct." *Cox Nuclear Pharmacy, Inc. v. CTI, Inc.,* 478 F.3d 1303, 1314 (Cal l 2007). "Additionally, the moving party must show that the conduct prevented the losing party from fully and fairly presenting his case or defense." Relief for fraud on the court under Rule 60(d)(3) is a narrow doctrine and constitutes only that species of fraud that defiles, or attempts to defile, the court itself, "or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases." see *Travelers Indem. V. Gore,* 761 F.2d 1649, 1551 (CA1 1 1985). A judgment is void under this rule 60(b)(4), "if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted

2

in a manner inconsistent with  due process of law." **Burke v. Smith, 252 F.3d 1260, 1263 (11th Cir. 2001).The record shows the** (RULE 60 BAR Hallway court) never established jurisdiction. Only 2 groups participated the first CINCINNATI  BAR ASSOCIATION  **DUNS # 074720863** and the second foreign entity working as a Public Charity or Private Foundation called the Ohio Common Pleas judges P.O. BOX 564 PERRYSVILLE OH 44864 IRS details  EIN 31-0962478, "THE JUDGES "have two more shell Duns numbers,  Ohio Common Pleas judges 107 W Liberty St Wooster OH 44691 **#092655031,** Ohio Common Pleas judges Urbana, Ohio  43078 # 964629774. This group was in a Sur. Juris capacity and most working from home or offsite. Therefore I, Mr. Sullivan makes an objection **Rule 103. Rulings on Evidence** PRESERVING A CLAIM OF ERROR. claim error of Magistrate Litkovitz, ruling to admit or exclude evidence. Under the Federal Rules of Evidence (FRE), there is no specific requirement that an affidavit must be notarized to be admissible in court. The admissibility of an affidavit in federal court is generally governed by Rule 56 of the Federal Rules of Civil Procedure (FRCP) in the context of summary judgment motions. This objection and statement is made under penalty of perjury.

2. **Magistrate plain error Doc #: 69 Filed: 10/25/23 Page: 3 of 24 PAGEID #:3115 A copy** of Rule 33 as it was in effect on January 15, 2021 is attached to defendant Brogan's declaration. **Brogan version is the 2023 that was changed for this case The 2022 version was for Mr. Sullivan and Mr. Gipson's appe  l.**

3. **Rule** 33 needs to be signed by a Judge in the form of an order, no said order was in place. It reads  Cell Phones, Cameras, Pagers, Laptop Computers, and Other Electronic Devices Unless otherwise permitted in accordance with Rule 30 of these Local Rules, the operation of any cellular or portable telephone, camera (still or video), pager, beeper, computer, radio, or other sound or image **recording or transmission device is prohibited in any courtroom or hearing room, jury room, judge's chambers or ancillary area** (to be determined in the sole discretion of the Court) without the express permission of the Court. All such devices must be turned off in the above-listed areas at all times.

4.  Mr. Sullivan and Mr. Gipson were not in one of the above listed areas. As stated in court both were in a public area and said claimed RULE change has was never changed this has been confirmed by Patrick Dressing, Lisa Brackman and Rich Hartmann (who want his name redacted) The correct RULE 33 shall be attached also at Doc #: 66 Filed: 10/03/23 Page: 70 of 101 PAGEID #: 2968 #: 2965

5.  Ms. Hayslip recorded Lieutenant Bregan destroying documents in their secret backroom meeting with Mr. Ruehlman (Doc. 49-3 at PAGEID 2604-24). In it, Robert Ruehlman first found plaintiff in contempt of court for yelling and causing a disruption in the courthouse.

**Magistrate plain error** Robert Ruehlman heard Sargent Dryer yelling Dryer and Hayslip tape is prima facia evidence of this fact. Robert Ruehlman never completed said order Crim .R. 19 (C)(2)(e) may be imposed only by a written order that recites the facts and certifies that the magistrate saw or heard the conduct constituting contempt. Judge Ruehlman found plaintiff in contempt of court a second time after defendant Ober reported to Judge Ruehlman that he found a recording device on plaintiff during booking. (*Id.* at PAGEID 2622). I Mr. Sullivan gave Ms. Hayslip and Mr. collini my phone and my body camera were off when court beg.·ı as stated in court and confirmed be Doc #: 33-13 Filed: 06/26/23 Page: 69 of 73 PAGEID #: 1834 Sheriff Deputy Joann at 24 minutes and Go Pro body cam manual Doc #: 39-1 Filed: 05/11/23 Page: 106 of 126 PAGEID #: 1815 The indicator light was not red or yellow

6.  that seem to be missing for the court docket with a total of 356 pages. Depuy Ober stated it was flashing green as stated in the manual it was standby OFF.

7.  and SHERIFF COUNTY OF HAMILTON 1000 Main St Rm 260, Cincinnati, OH 45202-1217 DUNS #15 442 4845. It is a fact that Jody Luebbers was the President elect of entity during her time working as administrative Judge of Hamilton County common pleas. A foreign agent is any person or entity actively carrying out the interests of a foreign principal while located in another host country, generally outside the protections offered to those working in their official capacity for a diplomatic mission.

8.  This Court's appellate jurisdiction is statutory and limited to review of final decisions of district courts or to interlocutory orders that: (1) grant, continue, modify, injunctions; (2) orders dealing with

4

receivers and liabilities of parties to admiralty cases. 28 U.S.C. §§ 1291 and 1292(a). In certain other cases,

9.   Where the district court determines that the order involves a controlling question of law. Such as a Magistrate or clerk not completing or correctly invoking 28 U.S. Code § 636 - Jurisdiction, powers, and temporary assignment. A Court (REMOTE DIVISON) runs out of Ruehlmans, Nestor Heekin and Lubbers private homes and the hallway and as new evidence shows this group could controls an estimated 552 million dollars through a ghost docket called the "M" docket.

10.   The lawful Court did not make an appearance until August 8th 2021 PROSECUTION COUNTY OF HAMILTON 230 E 9th St Ste 4000,Cincinnati,OH 45202-2174 DUNS # 045158412

## BACKGROUND

11. The Magistrate plain error in making the assumption of what version of local RULES was in place on 01/15/2021 New evidence from a clerk who worked at Hamilton County Court for over three decades no said local RULES were ever confirmed by the local RULE 2 process thus all Rules are **void ab initio.** The Magistrate plain error in assuming. The defendants got jurisdiction lawfully

12. The Magistrate plain error (Doc. 3 at PAGEID 109). Because plaintiff did not swear an oath2 before the notary Doc #: 3 Filed: 12/27/22 Page: 3 of 28 PAGEID #: 84 Magistrate plain error Has the wrong page number and my oath is in the 1st paragraph. As stated in quoting 28 U.S.C. § 1746(2) is a substitute the notary is preferred.

**13.   The Magistrate statement of includes a comment of a notary block partway through the filing, was an atte~pt to comply with a 20 page Judges standing orders when. The Magistrate invoked an unexpected Judge change on or about document #32. The clerk notice was never served to Mr. Sullivan thus it is hard to follow what standing orders are** in effect. The final transcript given to Jessacal and Joann deputies who illegally search my phone it is a transcript of a unauthorized person who claimed to be a Bonded Bailiff, not a peace officer. I watched with my own eyes Dryer and Hayslip's deception of 8 U.S.C. §1346: Honest Services

Fraud. The 28 U.S.C. § 1746 is in fact a substitute for a notary. At this point in time Plaintiff only know of documents 1500 to 1836 missing as more documents could be missing. At this point it looks as if the Local court RULES that were in place on January 15, 2023 have been removed more than once and they do not match Brogans Rules.

14.     The 1:22-cv-00764-MRB-KLL Doc #: 33-3 Filed: 06/26/23 Page: 1 of 1 PAGEID #: 1420 shows the (RULE 60 BAR Hallway court) Joseph T. Deters on March 22 2022 has changed the status of Mr. Ruehlman ι. his Sui Juris capacity.  1:22-cv-00764-MRB-KLL Doc #: 33-8 Filed: 06/26/23 Page: 2 of 11 PAGEID #: 1437 Mr. Patrick Dressing confirmed no changed to a Rule  30 - 33 joint session was recorded as Deputy . Speers Lieutenant Brogan, Sargent dryer and Mr. Ruelhman all stated in the sham court . Then confirmation LIEUTENANT: BROGAN: Yeah. I mean. Like today we tried to show him court rule 30 he thinks I drew this up. 1:22-cv-00764-MRB-KLL Doc #: 33-13 Filed: 06/26/23 Page: 33 of 73 PAGEID #: 1798. This Rule is for people who want to enter a court not people in the coffee shop with appointment to use court services.

15.     The Magistrate errored on what RULES were in place see 1:22-cv-00764-MRB-KLL Doc #: 33-12 Filed: 06/26/23 Page: 58 of 100 PAGEID #: 1723 to 1725.

16.     The Magistrate errored on second set were in place was done when a new **clerk was hired and sworn in by Appeals Judge Marlyn Zayers. The change was not in compliamce with the open meeting act 1:22-ᴄ ᵎ-00764-MRB-KLL Doc #: 33-11 Filed: 06/26/23 Page: 1 of 94 PAGEID #: 1572 to #: 1665.**

17.     1:22-cv-00764-MRB-KLL Doc #: 33-10 Filed: 06/26/23 Page: 1 of 111 PAGEID #: 1461 to 1571. This was the third set done on March 31ˢᵗ  2023.

18.     The last confirmation that said RULEs were not changed was Lisa Brackman compliance officer 1:22-cv-00764-MRB-KLL Doc #: 33-4 Filed: 06/26/23 Page: 2 of 2 PAGEID #: 1422

19.     Said Rule could have been updated up to July 15 2021 but were not this was Lisa Brackman second letter Mr. Ruehlman did not have subject matter jurisdiction and was not the proper venue. **The magistrate plain error** Case: 1:22-cv-00763-MWM-KLL Doc #: 69 Filed: 10/25/23 Page:

(4) 7 of 29 PAGEID #: 3115 Except when expressly permitted by a Hamilton County Judge under this Rule, or Local Rule 30, electronic devices shall not be used within any area of the Courthouse, i ·cluding designated areas, to:

(a) Take or record a photograph, video or other visual image, or;

(b) Record, transmit or receive audio or sound.

Hamilton County Court of Common Pleas Rule 30, in turn, governs media coverage of court proceedings. See id. (This was not the RULES in effect on 01/15'2021

20.     The correct RULE 30 in effect was "(B) Pursuant to Canon 3A, of the Code of Judicial Conduct, and Superintendence Rule 11 the Judge shall grant the request and record that permission in writing. In the event that a question arises as to whether the requested coverage is consistent with Canon 3(A)(7)(ii) interested representatives of the media shall select one of their number to represent them and shall be granted an opportunity to be heard". Myself James Sullivan, was held in detention unable to use court services. This was confirmed by the illegal search of my cell phone by Joann see stated on the Dryer Recording at 24 minutes thus it was before the sham Dryer RAMIFACATIONS court started. I should have been given a application see new exhibits

21.     I was discriminated against for standing next to a African American Canon 3A (3). The duty to be respectful includes the responsibility to avoid comment or behavior that could reasonably be interpreted as harassment, prejudice or bias.

22. The magistrate plain error Case: 1:22-cv-00763-MWM-KLL Doc #: 69 Filed: 10/25/23 Page: 7 of 29 PAGEID #: 3116 (Id., PAGEID 2602 at ¶¶ 15-19). Defendant Speer states that she did not detain or restrain Speers approached Myself Mr. Sullivan as the Dryer Hayslip's recording shows and state she is detaining me and want to follow me. Deputy Speers states "looie here  without a warrant Deputy Hrnkay wants to search Mr. Sullivans phone and it is in my pocket. Deputy Hrnkay who did not see anything puts another ADA requirement on Mr. Sullivan. I did read said RULES the night before 01/15/2021 judge Luebbers could "if said RULEs had changed" issue an Application Requesting Permission To Broadcast, Televise, Photograph,

7

Record Courtroom Proceedings as I James Sullivan was there because Judge Mallory committed USPS Mail Fraud with a city employee who also said he had "an order" also , I was in custody by Lieutenant Brogan who claimed to be in charge. Sargent Dryer stated he had an order. Brogan used the term "TAKE THEM" the Dryer Hayslip recording never shows Brogan offering anything only Dryer offers to look at the sham order not Brogan said Rule 30 with no signature. Dreyer admits to a 941. 18 U.S.C. 1343—ELEMENTS OF WIRE FRAUD as he stated a call was made.

23. The proper way per local court RULES is a REFERANCE by a court of record using form M9600400 Likewise; R.C. § 121.22(C) requires that "[a]ll meetings of any public body are declared to be public meetings open to the public at all times," and further declares that "[t]he minutes of a regular or special meeting of any public body shall be promptly prepared, filed, and maintained and shall be open to public inspection."

24. Case: 1:22-cv-00763-MWM-KLL Doc #: 69 Filed: 10/25/23 Page: 3 of 24 PAGEID #: 3116 See Doc. 49-5, PAGEID 2634 at ¶ 25).Defendant Dreyer further admits to a "brief but heated verbal exchange" with plaintiff during which both parties "raised [their] voices[,]" but he states that he nevertheless did not arrest or detain plaintiff prior to Judge Ruehlman's contempt rulings. [26:05] SARGENT: DRYER; [Yells] you're not supposed to pass the bar Mr. Sullivan, have a seat this again is a miss representation an plain error by Magistrate. At this point it is SARGENT: DRYER "Ramifications Court" he is the Judge the Bailiff As the Dryer Hayslips shows Mr. Sullivan: only askes What bar, what bar ? [indistinct chatter]

25. In law, the bar is the legal profession as an institution. The term is a metonym for the line (or "bar") that separates the parts of a courtroom reserved for spectators and those reserved for participants in a trial such as lawyers. SARGENT: DRYER: I am going to escort you. I am not running this court. SARGENT: DRYER but he states that he nevertheless did not arrest or detain plaintiff prior to Judge Ruehlman's contempt rulings. SARGENT: DRYER had both of his Deputies blocking the exit CORPORAL NICK HRNRYAK: I didn't even try to maintain the six feet so it doesn't matter. So Mr. Sullivan: I want to go [inaudible].

8

26. As confirmed by the Dryer Hayslip recurring Joann states phone was put up and the Sheriff made an illegal backup of Body camera and my phone.

27. In defendant Ober's declaration, he states that he placed plaintiff in handcuffs following Judge Ruehlman's first contempt ruling, transported him to the Hamilton County Justice Center, and conducted a search, during which he found a hidden body camera. (Doc. 49-6, PAGEID 2638 at ¶¶ 8-10). The t~tam defendant Ober's ony of defendant Ober's of flashing and the operation manual proves Mr. Sullivans body camera was off.

Case: 1:22-cv-00763-MWM-KLL Doc #: 49-8 Filed: 08/04/23 Page: 3 of 3 PAGEID #: 2643

Point 21 Mr. Sullivan did not believe our explanation of the changes to Local Rule 33 so Lt. Brogan went to his office and printed a copy of the rule and provided it to Mr. Sullivan.

Case: 1:22-cv-00763-MWM-KLL Doc #: 49-2 Filed: 08/04/23 Page: 2 of 7 PAGEID #: 2594 to 2599 Case numbered M-210049 2 Case numbered M-210051 both of said case numbers are a sham and all of the appeals and common pleas Judges had a duty to attend meetings and knew a joint session rule change had not happened in 38 years. There is no telling how many people went to jail for a Rule that did not exist and a clerk Aftab Pureval who abandoned his office.

28. In this case a motion has been filed with the court for said valid charging instrument no response however without a warrant, he shall, without unnecessary delay, take the person arrested before a court or magistrate having jurisdiction of the offense, and shall file or cause to be filed an affidavit describing the offense for which the person was arrested. Such affidavit shall be filed either with the court or magistrate, or with the prosecuting attorney or other attorney charged by law with prosecution of crimes before such court or magistrate and if filed with such attorney he shall forthwith file with such court or magistrate a complaint, based on such affidavit.

## STATEMENT OF THE CASE

29. Petitioner-Appellant James Sullivan filed the underlying Complaint against the 'The JUDGES "acting under the color of office and color of law as the Hamilton County Court of Common Pleas, retired Mr. Robert Ruehlman, formerly of the Hamilton County Common Pleas Court, and Mr. Thomas Heekin, acting a assignment clerk and Supreme court Justis Ms. Jody Luebbers, acting as

prosecutor and assignment clerk, Bailiff, Mr. Terrence Nestor duty assignment clerk, of the Hamilton County Common Pleas Court, Judge Ruehlman's former Ms. Laura Hayslip, acting as Judge, Apple cell phone tech, unauthorized Bailiff with no bond the Hamilton per Ruehlman per no authority.

30. Magistrate plain error. Appellant's claims originate from an incident which occurred at the Hamilton County Courthouse on January 15, 2021, for which Appellant was found guilty of contempt of court. The fact is there were 13 separate blocking of court ADA services recorded by Mr. Sullivan and Mr. Gipson. None of the infractions were recorded by Sheriff Deputies before January 15, 2021,

31. The fact is Mr. Ruehlman stated it was a trial to be continued and without proper Reference and Mr. Ruehlman did not complete "THE JUDGES" sham order is not final order per RULE 19. (C) Authority Magistrates. Did not have the authority to assist courts of record and pursuant to reference under Crim. R. 19(D)(1), magistrates are authorized, subject to the terms of the relevant reference, The lawful court used a M9600400 see attached exhibit. The Luebbers offsite court was not a court of Record. Mr. Heekin or Mr. Nestor working the Hallway. was not a court of Record All of the Defendants still need to complete a M9700400 and a (8) Contempt in the presence of a magistrate(a) Contempt order Contempt sanctions under Crim .R. 19 (C)(2)(e) may be imposed only by a written order that recites the facts and certifies that the magistrate saw or heard the conduct constituting contempt.

32. Mr. Ruehlman claimed all "THE JUDGES" created a new RULE the fact do not bear that out Said RULE would have to be voted on before December 30 2020 then authenticated by a bonded Clerk. Aftab Pureval did not sign an Oath of office on the 1st day of January 2017 thus he abandoned his office. The Court does have a fraud oath on file December 'missing date 2020, however Aftab Pureval is missing the necessary bond. Also Aftab Pureval did not file said late Bond and late Oath until 01/14/2021. Mr. Ruehlman, Mr. Heekin, Mr., Nestor and Ms., Luebbers did not have the Authority to makes said new Rule.

## ANALYSIS

33. Doc #: 69 Filed: 10/25/23 Page: 8 of 25 PAGEID #: 8 The County Defendants argue that they

are shielded by several types of immunity from. The entity called the Judges is an association and has not judicial authority or legislative power only operates, form Ohio Common Pleas judges P.O. BOX 564 PERRYSVILLE OH 44864 IRS details EIN 31-0962478. The elected Judges in Hamilton county have not filed with any clerk minutes of a meeting in 38 years. The group operates under the color of law and the color of office. In general Ohio counties are not sui juris but a Rule you must give up you rights by a Sui Juris hallway court, Heekin, Ruehlman, Luebber, Nestor Mr. Ruehlman, admitted to this fact in open court when Hrnyak asked Ruehlman was asked about a Rule that was not on the record Aftab Pureval did not sign his oath before taking office thus it was abandon. This turn of events made parts of the court Sui Juris and parts a common pleas division. Thus no qualified immunity. Sargent dryer told myself and Mr. Gipson we were many hats Ohio Rev .Code 3.061 since 2019. More and more employees had to work outside their normal job description. The example is Laura Hayslip acting as Bailiff requires differ training and different bonding. The clerk requires different Bonding and skill set,

34. The Sheriff Charmaine McGuffey in her official capacity did not meet the county full bonding requirements before the first Monday in January 2021, Because of this fact Sheriff Charmaine McGuffey could also be Sui Juris all of the office requirement were not meet as of the 11th of January 2021. Bond February 4th , 2021 f the sheriff fails to give a bond within the time required, or fails to give additional sureties on such bond or a new bond within ten days after receiving written notice that the board so requires, the board shall declare the office of such sheriff vacant.

35. The County Defendants argue that they are entitled to quasi-judicial immunity because guarding the coffee shop deli stopping people from the right to travel without any local rules warrant a bond or a Sheriff Does not qualify for immunity.

36. Magistrate Litkovitz Despite making general references to suing "each Defendant in his / her individual capacity," (Doc. 3 at PAGEID 92), plaintiff's complaint does not describe any specific actions taken by defendant McGuffey related to his claims and elsewhere acknowledges that he sues her only in an official capacity, as stated above it is what the Sheriff failed to allow Mr. Sullivan the right to travel. And use court services Johnson v. City of Cincinnati, 119 F. Supp. 2d 735 (S.D. Ohio

2000) the right to travel.

37.  Doc #: 69 Page: 5 of 25 PAGEID #: 5 (Doc. 3 at PAGEID 109).

Document 3 has 82 pages the magistrate. Case: 1:22-cv-00763-MWM-KLL Doc #: 3 Filed: 12/27/22 Page: 1 of 28 PAGEID #: 82 with the unauthorized change of Judge it seems Magistrate Litkovitz is analyzing the wrong case with the wrong Rules. It is clear that "enforcing or executing a court order is intrinsically a quasi-judicial fraud thus no immunity as it is not a judicial proceeding"

38.  The Courts plain error Local Rules. Hamilton Cnty. Common Pleas Court R. 33(C)(2), Common Pleas Local Rules, HAMILTON COUNTY COURTS, this was not in effect at on 0115/2021.

39.  Doc #: 69 Filed: 10/25/23 Page: 12 of 29  PAGEID #: 12 Where the record taken as a whole could

not lead a rational trier of fact to find for the non- moving party, there is so many 'genuine issue for trial a supplemental pleading may need to be completed.

40.  The Courts plain error (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982))). See also id. (quoting Hartman, 931 F.3d at 479) ("The government may restrict speech so long as the restrictions are viewpoint neutral and 'reasonable in the light of the purpose to be served by the forum.'")The Magistrate completely missed the point. Mr. Gipson and Mr. Sullivan were trying to pass through a public hallway. If an outside entity know as "THE JUDGES" usurped the court Mr. Sullivan still has a first amendment right to watch.

41.  Doc #: 69 Filed: 10/25/23 Page: 12 of 29  PAGEID #: 9 The County Defendants argue that they are entitled to quasi-judicial immunity because, during their interactions with plaintiff on January 15, 2021, they were "performing as courthouse  no jurisdiction no immunity. In *HOPPE v KLAPPERICH*," 224 Minn. 224, 28 N.W.2d 780 (1947). a municipal court judge was held to have acted wholly without his jurisdiction and in a non-judicial capacity when lie issued a warrant of arrest without a proper complaint. **Mr. Sullivan and Mr. Gipson has filed in court for production of documents went to the clerk on 11/14/2023 nothing has been produced by the "THE JUDGES "court see** *PIPER v. PEARSON*, **2 Gray 120, cited in** *BRADLEY v. FISHER*, 13 Wall. 335, 20 L.Ed. 646 (1872) Where there is no jurisdiction, there can be no discretion, for

discretion is incident to jurisdiction.

42. The Courts plain error Doc #: 69 Filed: 10/25/23 Page: 12 of 26 PAGEID #: 12 As best the Court can decipher, plaintiff's First Amendment claim against the County Defendants derives from their enforcement of Rule 33's recording prohibition.6 (See Doc. 3 at PAGEID 92-93). Document # 3 (Case: 1:22-cv-00763-MWM-KLL Doc #: 3 Filed: 12/27/22 Page: 1 of 28 PAGEID #: The Courts plain error analysis is clearly erroneous unilaterally restrict plaintiff's speech but rather simply changing the Hamilton County Court of Common Pleas' local rules. Are arbitrary and capricious who is the person entity ( changing said RULES) what would it depend on training level and if any, communication were in place and unreasonable act of will. Mr. Sullivan was not using the hallway also not being used as "In a limited public forum, the government. No state or public officials did not implement validly enacted state laws or local court rule see Rule on local Rules in effect on 01/15./2021,typically does not satisfy any  [qualified immunity] objective reasonableness is not a phone search 1 minute 30 seconds after a complete security check was complete. their official duties unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known. "see Harlow v. Fitzgerald (457 U.S. 800, 818 (1982)) Riley v. California, 573 U.S. 373 (2014) The record shows Dale mikes illegal search yielded a 2 second span when Mr. Gipson was shutting off his alarm. Deputy Speers engaged Mr. sullivan 1st then misrepresented herself and later perjured herself  Doc #: 49-3 Filed: 08/04/23 Page: 1 of 25 PAGEID #: 2600 this is a "fraud on the court" see is Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944). In this case, the U.S. Supreme Court addressed the issue of fraud on the court and discussed the circumstances under which a court may set aside a judgment based on such fraud. The court emphasized the importance of maintaining the integrity of the judicial process and expressed the view that a judgment obtained through fraud on the court should not be permitted ιo stand.

43. Doc #: 69 Filed: 10/25/23 Page: 13 of 29  PAGEID #: 13 Hrnyak did not have the right to use denial of court service for a search. that was not 'reasonable

44. The Courts plain error Doc #: 69 Filed: 10/25/23 Page: 13 of 29  PAGEID #: 13

[Rule 33]."), but he asserts that Rule 33 was invalid (*see* Doc. 53, PAGEID 2683 at ¶ 35 "The so called 'NEW RULE' This fact was stated in open court by Ruehlman and by deputy Speers and by Deputy Hrnyak the new evidence from Clerk Doe is the joint session has not had any minutes of any meeting for 38 years thus it had no binding Rule' this is how public trustees control other illegal activities. As clerk Doe states how the enterprise 'MOVES CASES AROUND" Mr. Ruehlman had a duty to issue RULE 12 permission 33 Doc #: 69 Filed: 10/25/23 Page: 14 of 26 PAGEID #: 14 1:22-cv-00764-MRB-KLL Doc #: 33-13 Filed: 06/26/23 Page: 3 of 73 PAGEID #: 1768 Mr. Sullivan: And that's 33 and three?

DEPUTY: SPEERS: No, it's 30.

DEPUTY: SPEERS: its 30 not 3.1:22-cv-00764-MRB-KLL Doc #: 33-13 Filed: 06/26/23 Page: 32 of 73 PAGEID #: 1797

[50 26] JUDGE RUEHLMAN: hers the new rules you want to explain to them so they know in the future?

[50 28] JUDGE RUEHLMAN: The new rules? (emphasis added) JUDGE RUEHLMAN. Yeah, well he didn't, we wrote it. "THE JUDGES".(emphasis added)

[50:50] JUDGE RUEHLMAN: Also, you told me too, the other thing they did when they claimed they can't go through the metal detector, right? Exparte meeting 1:22-cv-00764-MRB-KLL Doc #: 33-13 Filed: 06/26/23 Page: 33 of 73 PAGEID #: 1798

LIEUTENANT: BROGAN: Yeah. I mean, Like today we tried to show him court rule 30 (emphasis added) he thinks I drew this up.The County Defendants have presented the declarations of defendants Speer, Hrnyak, Dreyer, and Brogan, which demonstrate that they stopped plaintiff from recording in the Courthouse as a function of their enforcement of Rule 33. (See Doc. 49-3, PAGEID 2602 at ¶ 16; Doc. 49-8, PAGEID 2643 at ¶ 17; Doc. 49-5, PAGEID 2634 at ¶ 21; and Doc. 49-4 as the above Hayslip Dryer recording shows Rule 30 grants permission a Rule 33 is an order. If the Constitution and laws of the United States are to be enforced, this Court cannot accept as final the decision of the state tribunal as to what are the facts alleged to give rise to the right or to bar the assertion of it even upon local grounds. *Creswill v. Grand Lodge Knights* of *25 Pythias, 225 U.S.

14

45. Doc #: 69 Filed: Page: 1 of 26 PAGEID #: 15 Defendant declaration similarly demonstrates that any action taken by her towards plaintiff on the date of the incident at issue was directly pursuant to Judge Ruehlman's courtroom rules. (See Doc. 49-7, PAGEID 2639-40 at ¶¶ 5, 9).

46. Doc #: 69 Filed: 10/25/23 Page: 15 of 29 PAGEID #: 15 This statement show Sargent Dryer is in control of his RAMIFACATIONS court

SARGENT DRYER: It is an electrical device that is capable of recording.

Mr. Gipson: That ain't what she said, ma'am, sir.

BAILIFF HAYSLIP: We'll give you the right cell phones. HAYSLIP In the above exchange she did state "We'll give you' as both are unbonded and no new Rule has been passed for 38 years. Defendant Hayslip's declaration similarly demonstrates that any action taken by her towards plaintiff on the date of the incident at issue was directly pursuant to Judge Ruehlman's courtroom rules. (See Doc. 49-7, PAGEID 2639-40 at ¶¶ 5, 9). Plaintiff offers no cogent This is false Dryer orders what is seized Case: 1:22-cv-00764-MRB-KLL Doc #: 33-13 Filed: 06/26/23 Page: 20 of 73 PAGEID #: 1785

47. The Courts plain error states As explained in its prior Order and Report and Recommendation, the Court understands plaintiff's first Fourth Amendment claim in Count II to refer to a search and seizure that allegedly occurred just after his routine security check upon entering the Courthouse. The security checks were total imposable and most are on the docket the court has been looking brief and the electronic evidence Has been entered in both cases for back up. The Magistrate is not seeing the 13 other violation.

48. The Courts plain error Doc #: 69 Filed: Page: 16 of 26 PAGEID #: 16 As explained in its prior Order and Report and Recommendation, the Court understands plaintiff's first Fourth Amendment claim in Count II to refer to a search and seizure that allegedly occurred just after his routine security check upon entering the Courthouse.8 (See Doc. 41 at PAGEID 1908). The County Defendants rely on defendants Hrnyak, Brogan, and Dreyer's declarations to demonstrate that plaintiff accompanied them voluntarily to find a judge in the Courthouse to explain Rule 33's

recording prohibition. (See Doc. 49-4, PAGEID 2627 at ¶¶ 21- 22; Doc. 49-5, PAGEID 2634 at ¶¶ 23-25; Doc. 49-8, PAGEID 2643 at ¶¶ 22-24; see also Doc.49-3, PAGEID 2602 at ¶¶ 19-20. Again a disabled person has to submit to more requirements as I, Mr. Sullivan watched at least five able body people on their cell phones not just shutting the phone off. This does violate 42 U.S. Code § 12203. I Mr. Sullivan was in the court for Judge Mallory's mail fraud scheme as all was in digital format. The techniques are very much the same. The complaint is 13 separate incidents of complete denial of court services.

49. The Courts plain error Doc #: 69 Filed: 10/25/23 Page: 16 of 29 PAGEID #: 16 Plaintiff's argument, however, is "concrete evidence' Hayslip and Dryer recorded their own violations and I, Mr. Sullivan witnessed it 1ˢᵗ hand "

[Defendant Dreyer]: statement I have explained to you, if you wanna leave, you can leave. . . ."
(Doc. 52 at PAGEID 2665).

Mr. Sullivan has to be exposed to and go into a sham court to use court services and Mr. Gipson is still detained by two Deputies. Riley v. Dorton, 115 F.3d 1159, 1163 (4th Cir.1997) (en banc) (rejecting "continuing seizure" doctrine); Reed, 77 F.3d at 1052 n. Holding that "the Fourth Amendment does not embrace a theory of `continuing seizure' and does not extend to the alleged mistreatment of arrestees or pretrial detainees in custody" Johnson v. City of Cincinnati, 119 F. Supp. 2d 735 (S.D. Ohio 2000)

50. At this point, the record shows evidence to suggest that if Sullivan wanted to use court services was to argue with Judge Ruehlman's RULE 30 states, he SHALL issue a RULE 30 permit.

TENNESSEE V. LANE 541 U. S. NO. 02-1667 (2004) Title II of the Americans with Disabilities Act of 1990 (ADA or Act), 104 Stat. 337, 42 U. S. C. §§12131–12165, provides that "**no qualified individual** with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." §12132. Central among these conclusions was Congress' finding that "individuals with disabilities are a discrete and insular minority who have been faced with restrictions and limitations, subjected to a history of purposeful unequal treatment, and

16

relegated to a position of political powerlessness in our society, In the case of . ***Popovich v.***
***Cuyahoga County Court,*** 276 F. 3d 808 (CA6 2002).**public services, programs, and activities,**
which are the subject of Title II; and public accommodations, which are covered by Title III. Title
II, §§12131–12134, prohibits any public entity from discriminating against "qualified" persons
with disabilities in the provision or operation of public services, programs, or activities. **The Act**
**defines the term "public entity" to include state and local governments, as well as their**
**agencies and instrumentalities. §12131(1).** Persons with disabilities are "qualified" if they, "with
or without **reasonable modifications to rules, policies, or practices,**

51. The Courts plain error Doc #: 69 Filed: 10/25/23 Page: 17 of 29 PAGEID #: 17 The record
shows that Mr. Sullivan had to turn over his cell phone and take verbal abuse from Dryer and Hayslip
Doc #: 69 Filed: 10/25/23 Page: 17 of 25 PAGEID #: 17 "It is well settled that police may take
property into custody during a routine inventory search incident to arrest." In this case it was two
civilian employees not officers of the court. The "JUDGES" court was an association that without
authority made up rules without approval of a joint session as required by local RULE #2 Mr.
Sullivan has presented any evidence in Hayslip dryer last day at work tape.creating a genuine issue
of material fact that defendants Hayslip or Ober unconstitutionally *Scheuer v. Rhodes*, 416 U.S.
232, 94 S. Ct. 1683, 1687 (1974) By law, a judge is a state officer. The judge then acts not as a
judge, but as a private individual (in his person). When a judge acts as a trespasser of the law, when
a judge does not follow the law, the Judge loses subject-matter jurisdiction and the judges' orders
are not voidable, but VOID, and of no legal force or effect.

52. The U.S. Supreme Court stated that "when a state officer acts under a state law in a manner
violative of the Federal Constitution, he comes into conflict with the superior authority of that
Constitution, and he is in that case stripped of his official or representative character and is
subjected in his person to the consequences of his individual conduct. The State has no power to
impart to him any immunity from responsibility to the supreme authority of the United States."
Mr. Ruehlman at the starts of what defendants call a court was a Sham without a charging
instrument without a VALID rule in place. Mr. Ruehlman knew he did not have the proper venue

and he did not have Subject mater jurisdiction

53. *ARGERSINGER v. HAMLIN,* 407 U.S. 25 (1972) The right of an indigent defendant in a criminal trial to the assistance of counsel, which is guaranteed by the Sixth Amendment as made applicable to the States by the Fourteenth, Gideon v. Wainwright, 372 U. S. 335, is not governed by the classification of the offense or by whether or not a jury trial is required. No accused may be deprived of his liberty as the result of any criminal prosecution, whether felony or misdemeanor, in which he was denied the assistance of counsel.

54. *UNITED STATES v. HOTAL* 143 F.3d 1223 9th Cir. (1998)

Holding that "in **order to comply with the Fourth Amendment,** an anticipatory search warrant must either on its face or on the face of the **accompanying affidavit,** clearly, expressly, and narrowly specify the **triggering event."** The court held We have found warrants to lack sufficient particularity when they have failed to specify the items to be seized. see **United States v. Kow, 58 F.3d 423, 427 (9th Cir.1995),** or the location to be searched, see **United States v. Robertson, 833 F.2d 777, 783 (9th Cir.1987).**

55. 1:22-cv-00764-MRB-KLL Doc #: 33-13 Filed: 06/26/23 Page: 31 of 73 PAGEID #: 1796 Speers 1st fraud

DEPUTY SPEERS: Yes. judge. When I attempted to ask him if he would show me his phone, he refused. Mr. Sullivan stepped over and started yelling at me, getting very close, not socially distancing. id Doc #: 33-13 Filed: 06/26/23 Page: 31 of 73 PAGEID #: 1796

[49 49] JUDGE RUEHLMAN: Because I did hear a lot of yelling. I was [inaudible] in the court. Who's yelling in court? Who's the one yelling, screaming, and yelling? Okay. He's got three days to contact. He [inaudible]. Mr. RUEHLMAN in his Sui juris capacity did not complete the RULE 19 D8 where he has to swear under oath Mr. Gipson and Mr. Sullivan have filed in the Hamilton county court for the final order and the minutes of the meeting for what Mr. Ruehlman called in open court "THE RULE"

56. The Courts plain error Doc #: 69 Filed: 10/25/23 Page: 18 of 29 PAGEID #: 18 Count III, although captioned as a conspiracy claim, magistrate is correct it is clear Mr. Ruehlman had Mr.

Sullivans body cam searched without probable cause just a not under oath statement by Speers and he does not know and has not completed his sham (Rule 60 BAR Hallway court) needed a 19D8 under oath statement

[3: 16 11]: Joanne: it had an audio recorder on it. That was already put up. And then when they arrested him, they found a body CAM video. Like he had a whole-body CAM thing. Id Doc #: 33-13 Filed: 06/26/23 Page: 69 of 73 PAGEID #: 1834

The record shows Mr. Ruehlman held exculpatory evidence for one year and a half Because plaintiff did not appeal his contempt convictions or proffer evidence to rebut their validity (see Doc. 49-1)

57. The Courts plain error Doc #: 69 Filed: 10/25/23 Page: 19 of 29 PAGEID #: 19 The County Defendants argument is moot the appeal process is going on right now.

58. Doc #: 69 Filed: 10/25/23 Page: 19 of 29 PAGEID #: 19 The motion for the return of Mr. Sullivans property " was never resolved; now more evidence has been discovered

59. Doc #: 69 Filed: 10/25/23 Page: 19 of 29 PAGEID #: 19 Mr. Sullivan. Did have experience with the Hamilton County and city of Cincinnati sham "I GOT AN ORDER" The attorney for the defendants Joesph Deters Defendants Attorney was served notice and all knew I, Mr. Sullivan was and is not a corporate fiction and all have been given proper notice. at 230 east ninth Street #4000 Cincinnati Ohio 45202-DUNS# 045158412 Magistrate Litkovitz statement Fifth, Sixth, Eighth, and Fourteenth Amendments plaintiff makes "passing references" the full documents are on Judge Mallory's Docket in regards to his mail fraud and Mr. Ruehlman in regards to him and the Enterprise called "THE JUDGES" and CINCINNATI BAR ASSOCIATION 225 E 6TH St FL 2 Cincinnati, Ohio 45202 DUNS # 074720863

60. The Courts plain error Associations can be sued see *UNITED STATES v. MONGAL NATION*, 370 F. Supp.3d 1090,1127- 29 (C.D. Cal. 2019) (agreeing with Jund that unincorporated associations can be held liable for RICO predicate acts) also see *Jund v. Town of Hempstead*, 941 F.2d 1271, 1281-82 (2d Cir. 1991) (holding that an unincorporated political association was a RICO "person" 9 Doc #: 33-1 Filed: 06/26/23 Page: 9 of 20 PAGEID #:

1392.Fifth, Sixth, Eighth, and Fourteenth Amendment claims against the County Defendants, and any such claims contained in his complaint should be expanded to include the DOJ and the Attorney General of Ohio. As to plaintiff's Fourteenth Amendment claim in particular, that relates to due process and the return of information on Mr. Sullivans cell phone, the Court notes that plaintiff did allege in his complaint that he had a "court order to return [his] property" and that the property had not yet been returned as of the filing of his complaint. (Doc. 3, PAGEID 97 at ¶ 50). The exculpatory evidence Mr. Ruehlman held even after a court order did further damage But Mr. Sullivan did try state remedies for redressing the Ohio Supreme court found to be inadequate. Now we know about the "M' docket as stated by the clerks is nonpublic, does control an estimated 553 million dollars.[1]

61. The Courts plain error appellant's claims originate from an incident which occurred at the Hamilton County Courthouse on January 15, 2021, for which Appellant was found guilty of contempt of court. This is not correct it was an ADA claim where services were denied by "THE JUDGES" on .under 42 U.S.C. §12203 ADA title However we were blocked numerous times; 07/20/2020, 07/21/2020, 07/23/2020, 07/28/2020, 08/03/2020, 08/10/2020, 08/25/2020, 08/27/2020, 09/25/2020, 09/29/2020, I 0/01/2020, 10/02/2020, 12/03/20, 01/15/2021. It now known the actions are arbitrary and caprice. The may balance the need for injunctive relief

    a. When the party seeking the injunction has shown a "strong" likelihood of success on the merits;

        The evidence that is in the clerk's office now on thumb drive in the clerk's office Should be strong enough to convict most if not all defendants.

    b. When the party seeking the injunction will suffer irreparable harm absent the injunction;

---

[1] Both this Court and the District Court are entitled to take judicial notice of facts appearing on a state court online docket. *See Lynch v. Leis*, 382 F. 3d 642, 647, n.5 (6th Cir. 2004).

The act of an outside group to control access to public facility when time sensitive irreparable damage shall accrue. The physical damage of walking extra strain my heart can not be repaired

c. When an injunction will cause others to suffer substantial harm; and when the public interest would be served by a preliminary injunction.

The access to the private "M" docket would serve the public benefit at an estimated benefit of 552 Millon dollars. The facts and requirements under O.R.C. 121. 22 and process of court function

62. The Courts plain error Doc #: 34 Filed: 05/02/23 Page: 1 of 5 PAGEID #: 1496

The Court sees no connection between the conduct described in plaintiff's Request for Preliminary Injunctions and the ADA claims alleged in the complaint. "[A] party moving for a preliminary Injunctions must necessarily establish a relationship between the injury claimed, The fact of walking extra city blocks when entry Does not cost the county anything and having to hire someone just to enter the court is a direct burden. The fact of an Sheriff Deputy who flexes his power because he can control Judges both offsite and in the court and having Mr. Sullivan and Mr. Gipson do an 8 level detainment with a broken leg is a direct established relationship as Mr. Sullivan was admitted to the U.C. emergency room after standing next to someone who shut off an alarm in a public area.  Colvin v. Caruso, 605 F.3d 282, 300 (6th Cir. 2010) (quoting Devose v. Herrington, 42 F.3d 470, 471 (8th Cir. 1994) to use in an attempt to address other issues unrelated to his original complaint."

The courts attempt to address other issues has no standing as Judge Mallory has admitted to the courts lack of due process, the courts mail fraud is another matter.

63. The Courts plain error Doc #: 34 Filed: 05/02/23 Page: 1 of 5 PAGEID #: 1497 " With respect to prong one, plaintiff's motion appears to describe and address the merits of claims not asserted in his underlying complaint.  Plaintiff describes a "pump and dump scheme." which as best the Court can decipher involves "mail fraud" and "sham court" proceedings. (Doc. 5 at PAGEID 115- 117). The Court sees no connection between the conduct described in plaintiff's Request for Preliminary

Injunctions and the ADA claims alleged in the complaint. "[A] party moving for a preliminary Injunction must necessarily establish a relationship between the injury claimed in the A preliminary. The Courts untrained in FIRE CODE procedure does not excuse any court from usurping Due Process. Mr. Sullivans case is only the tip of the main problem, The amount of assets The RULE 60 BAR Hallway court can move is astronomical. I have attached the M9700400 to give the court a clue

64. With respect to the second prong, plaintiff broadly asserts various damages related to the January 15, 2021 incident (see Doc. 5 at PAGEID 119 (e.g., a heart attack, COVID-19, and emotional trauma)). But plaintiff does not identify specific harm—let alone irreparable harm. The court does not understand the damage a court not of Record can do when a Judge states I'LL back you and when untrained police and fireman without training. Mr. Sullivan damage was 7 months of an admiralty jurisdiction and court had no contract or damages Joe Deters has one now and he was the attorney for all defendant's Mr. Sullivan suffered a Heart attack was a direct damage and CO-VID 19.

65. With respect to the third proper pong, the Court is unable to evaluate an injunction's potential harm to others because plaintiff has not clearly described the particular injunctive relief that he seeks. The third prong therefore does not weigh in plaintiff's favor which as best the Court can decipher involves "mail fraud" and "sham court" proceedings. (Doc. 5 at PAGEID 115- 117). The Court sees no connection between the conduct described in plaintiff's Request for Preliminary Injunctions and the ADA claims alleged in the complaint. Mr. Sullivan would like to continue using all court services without discrimination and harassment.

66. The Courts plain error Doc #: 41 Filed: 05/16/23 Page: 2 of 29 PAGEID #: 1894 based on this incident. The Judicial Defendants move to dismiss all claims against them. The Plaintiff moves this courts Rule Defendants motion as moot as new evidence Mr. Sullivan would like to be safe during any upcoming processing employee who work for both the sheriff and clerk need the same safety.

67. The Courts plain error Doc #: 41 Filed: 05/16/23 Page: 1 of 29 PAGEID #: 1894 Plaintiff next appears to allege that defendant Dryer referenced but did not produce a rule

Plaintiff said he had a meeting with Sheriff Jim Neal, and defendant Speers said she would need to follow plaintiff and/or Mr. Gipson. The Court has failed to evaluate all the evidence on the docket for a fair and thorough review of this matter, recognizing the importance of impartiality and a comprehensive examination of the facts. The court seems split at this point however a careful consideration of the evidence and relevant legal principles will lead to a just and equitable resolution in this dispute.

68. The Courts plain error Plaintiff next appears to allege that defendant Dryer referenced but did not produce a rule of the Hamilton County Court of Common Pleas that prohibited recording with electronic devices in the Courthouse ("Rule 33(C)(5)(d)"). The Court came up with ("Rule 33(C)(5)(d)").on its own The 01/14/21 RULE 33 is now on other dockets in the courts the issue is "THE JUDGES" did not approve said orders per Ohio Rules of Superintendence thus said rule is not voidable but void Effective March 1, 2023, this Rule was renumbered to Rule 33(E)(4). See Common Pleas Local Rules, HAMILTON COUNTY COURT, available at https://hamiltoncountycourts.org/index.php/local-rules/ (last visited May 8, 2023).

69. Doc #: 41 Filed: 05/16/23 Page: 3 of 29 PAGEID #: 1895 factual allegations as true and make reasonable inferences in favor of the non-moving party. Keys v. Humana, Inc., 684 F.3d 605, 608 (6th Cir. 2012) The date 01/14/21 is when Aftab Pureval did file is paper work and bond .The question is who and when was a co-conspirators after the fact.

70. The Courts plain error Doc #: 41 Filed: 05/16/23 Page: 6 of 29 PAGEID #: The Rooker-Feldman doctrine "precludes 'lower federal courts from exercising appellate jurisdiction over final state-court judgments.'" Skyway Inv. Corp. v. Tushman, 541 F. App'x 536, 538 (6th Cir. 2013) (quoting Lance v. Dennis, 546 U.S. 459, 463 (2006). Mr. Ruehlmans has not made a final order the problems with the docket number and the fact that Mr. Rulehman operating under the color of office and under the color of law the court made the wrong assumption the CF 24 and CF 25 and CF 25A were on the docket. And rule 19 D8 was complete thus a meticulous review of the evidence and pertinent legal principles is what is needed.

71. The Courts plain error Case: 1:22-cv-00763-MWM-KLL Doc #: 41 Filed: 05/16/23 Page:

24 of 29 PAGEID #: 24 motion to dismiss states that plaintiff did not appeal his contempt convictions

(*see* Doc. 16 at PAGEID 230), The fact that it is a trial in progress is Mr. Ruehlman own words from the bench JUDGE RUEHLMAN: Let's get the guys to open it up and then we'll continue the hearing. He's locked up until then. We'll continue our [inaudible] trials in progress. 1:22-cv-00764-MRB-KLL Doc #: 33-13 Filed: 06/26/23 Page: 24 of 29 PAGEID #: 24

The Rooker–Feldman doctrine is a doctrine of civil procedure it does not apply because Mr. Sullivan served Joe Deters @ 4000 Judge William Mallory # 240 and Major Hendricks # 260 the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution. Mr. Ruehlmann stated you don't have any rights.

72. The Courts plain error Doc #: 41 Filed: 05/16/23 Page: 8 of 29 PAGEID #: 8 In reply, the Judicial Defendants argue that 42 U.S.C. § 12202 states that "[a] State shall not be immune" from suit for violations of the ADA but does not address immunity of state officials in their individual capacities. Id. (emphasis added).While it is less likely for an action to be judicial if it is not an adjudication between parties, see Morrison, 877 F.2d at 466 ("Any time an action taken by a judge is not an adjudication between parties, it is less likely that the act is a judicial one."), As best the Plaintiff can decipher, "THE JUDGES" change from judicial to non-judicial seems like an 18 U.S.C. §§ 1961-68) enterprise that controls more than 500 million dollars in Hamilton county Real Estate. The statement from Mr. Ruehlman fits into the "M" docket with no constitutional rights as stated by Mr. Ruehlman. *Cleburne* v. *Cleburne Living Center, Inc.,* 473 U. S. 432 (1985). The decisions of other courts, too, document a pattern of unequal treatment in the administration of a wide range of public services, programs, and activities, including the penal system

73. The Courts plain error Doc #: 41 Filed: 05/16/23 Page: 24 of 29 PAGEID #: 24 Plaintiff's complaint alludes to defendant Luebbers being the "Presiding Judge" that would have had the power to authenticate Hamilton County Court of Common Pleas rule changes but does not allege

that defendant Luebbers took any particular actions related to the January 2021 incident at issue. (Id., PAGEID 89 at ¶ 18). Ms. Jody Luebbers working under the color of office and under the Rules of court should have known no joint session was assembled before December 31 2020 but without a charging instrument and without a valid local RULE in place for 38 years trespasses on Mr. Gipson and Mr. Sullivans Right to travel, The standard M9600400 was kept silent.

74. Doc #: 41 Filed: 05/16/23 Page: 25 of 29 PAGEID #: 25 In this case, however, plaintiff's First Amendment claim challenges the enactment of Rule 33(C)(5)(d) by the Judicial Defendants, which plaintiff alleges prohibits him from recording public officials in the courthouse in violation of his First Amendment rights. The court did not consider Mr. Sullivan and Gipson right to ensure that decorum prevails, and we trust that a careful consideration of the evidence and relevant legal principles will lead to a just and equitable resolution. The fact walking into a "JUDGES ENTERPRIZE" without proper authority, the magistrate stepped out of his function as a magistrate and, Magistrate by his actions and statements, figuratively assumed the cloak of a tribunal Mr. Ruehlman crime would go un-noticed. The unauthorized Bailiff wanted a memory of her last day at work recorded the violations. Mr. Ruehlman had a duty to issue per Rules of Superintendence RULE 12. The right to watch a sham trial is still protected by the 1st amendment

75. The Courts plain error Doc #: 41 Filed: 05/16/23 Page: 25 of 29 PAGEID #: 25 The only conceivable link between defendants Heekin, Luebbers, and Nestor and any constitutional claim is through an inference that they, along with defendant Ruehlman, were defendant Ruehlman, were involved in the enactment Rule 33(C)(5)(d), which violated the First Amendment. The fact that all defendants knew that no lawful clerk was hired after abandonment of the office of Aftab Pureval and all knew said claim of a changed local RULE was in fact impossible by and through the court of common pleas court. The fact was the RULE 30 and 33 cover up by all Judges did without an open meeting per . ORC 121.22. or any meeting on the "M" docket the violation was 18 U.S. Code § 3 - Accessory after the fact and 18 U.S.C. §1346 as a scheme to defraud another of the intangible right to honest services through a scheme to violate a fiduciary duty, Article 1 § 10. This prohibits the states from passing any laws which apply ex post facto. The action of this group of BAR

members FEDERAL BAR ASSOCATION FOUNDATION of CINCINNATI

425 Walnut St, Cincinnati, OH 45202-3956 513 381-2838 DUNS # 963198887 and the

CINCINNATI BAR ASSOCATION 225 E 6TH St FL 2 Cincinnati, Ohio 45202 513 381-8213

DUNS # 074720863. The action of the local association have extremely tarnished the reputations

of all members.

## STATEMENT OF FACTS

The Courts plain error James Sullivan's claims originate from an incident which occurred at the Hamilton County the facts are 13 incident resulted in Appellee Mr. Ruehlman in clear absents of all jurisdiction 'THE JUDGES" used a shell case with a missing zero Hamilton County Case No. M-210049, Mr. Ruehlman council used the same fake number. A correct number should have A letter and 7 digits and A true and accurate copy has never been produced by Hamilton County Common Pleas Case No. M-210049. The new evidence provide by the clerks no meeting was to change the local tule ever was confirmed. by any joint session Hamilton County Sheriff's Office deputies untrained told Mr. Ruehlman that Appellant had been recording the courtroom proceedings, Deputy Ober stated himself said body cam was flashing. Without checking the manual or having the opportunity to cross examine deputy the days in jail in Hamilton County Case No. M-210051 Mr. Ruehlman council used the same fake number a second time (a true and accurate copy of the docket in Hamilton county never supplied  The complete transcript is on the docket in Hamiton county[2] Appellant's Complaint alleged that he and another individual, David Gipson, were confronted by Hamilton County Sheriff's Office employees in a courthouse hallway and that one or more employees demanded to search Appellant's cell phone. (RE 3, Complaint PAGEID 85, 88). The Complaint recording shows that Mr. and Mr. Gipson were  shown, a Rule 30 with no signature

---

[2] Both this Court and the District Court are entitled to take judicial notice of facts appearing on a state court online docket. See Lynch v. Leis, 382 F. 3d 642, 647, n.5 (6th Cir. 2004).

County Common Pleas Case No. M-2100051 was attached to the Judicial Appellee's Motion to

no rule regarding the usage of electronic devices you must be inside a courtroom. Appellant blocked from using honest service and handed over his cell phone after SGT Dryer had an out burst of yelling and then Mr. Hayslip the recoding shows Bailiff took Mr. Sullivan phone and Body camera to Joann she searched, Mr. Sullivan phone and confirmed it was quote "PUT IP" at 24 minutes Mr. Sullivan was arrested for watching a sham trial

Mr. Sullivan watched  Mr. Gipson sham  detained The M-2100051 the non-court of record has no record a "sham hearing"

According M-210051, M-210049 and M-210050 as used  in the Ohio First District Court of Appeals Opinion, on January 15, 2021, Appellant was found Ohio First District of court did not have jurisdiction and returned the case for return of property I pad aand cell phone were sent to a digital lab and data was still on the I pad Mr. Sullivallan sim card was removed with the December 3rd incent erased. Mr. Gipson thumb drive was not returned but Dale Mikes form HCSO illegal search did have the SGT Dryer blocking and threating incent on December 3rd.

On December 22, 2022, Appellant filed his Complaint in the United States District Court for the Southern District of Ohio, bringing claims for violations of various Constitutional and statutory rights against the Defendant-Appellees and, at the same time, moved for a preliminary injunction in which he sought an order permanently enjoining the Defendant-Appellees from violating the Title II of the Americans with Disabilities Act ("ADA"), among other relief. Appellant subsequently filed two more motions for preliminary injunction On January 17, 2023, Judge Ruehlman, Judge Heekin, Judge Luebbers and Judge Nestor (the "Judicial Appellees") moved to dismiss the claims against them and responded in opposition to the request of a preliminary injunction On May 2, 2023, the Magistrate Judge issued a report and recommendation that Appellant's first motion for a preliminary injunction be denied On May 16, 2023, the Magistrate Judge issued a report and recommendation that the Judicial

## **CONCLUSION**

The nature of this fraudulent conduct not only strikes at the heart of the principles governing our legal system but also undermines the foundation upon which our trade and trustees have sworn their solemn oaths to uphold and defend the U.S. Constitution. This egregious transgression not only offends the integrity of the court proceedings but also erodes the bedrock of trust upon which our legal and constitutional framework relies. It not only violates the sanctity of the legal process but also jeopardizes the very essence of the duties and responsibilities entrusted to those bound by their commitment to the Constitution. Therefore Mr. Sullivan moves this court to reconsider this case, motion to strike emphasizing the new evidence of 38 years of no clerk conformation of local Rules need for an unbiased and exhaustive examination. Mr. Sullivans  primary objective is to secure a fair outcome, and a meticulous review of the evidence and pertinent legal principles will lead to a just and honorable balanced resolution However this is so repugnant to the very trade and trustees who sworn an oath to uphold and defend the U.S. constitution.

James Sullivan C/O
3556 Wilson Ave.
Cincinnati, Ohio [45202]
88automate@gmail.com.

28

EMMANUEL ANAGNOSTOU
Notary Public, State of Ohio
My Commission Expires
APR 13 2024

James Sullivan, authorized Representative on behalf of JAMES SULLIVAN, Ens Legis. in Propria Persona, Sui Juris, and as one of the people of the United States, and in this court of record in the above-captioned matter, under oath do hereby state and depose. My statement is made on personal firsthand knowledge, and I am competent to do so. I have made this statement in the State of Ohio, in the County of Hamilton. I James Sullivan under oath do hereby state and depose. And in compliance with 28 U.S. Code § 1746 "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on (date 12/ 09/23

**Ohio**

**County Hamilton**                    By: _____

**PUBLIC NOTARY WITNESS:**

**Today, on the 9th of December, in the year 2023, I was visited by a man properly identified or known to me to be James Edward Sullivan and he did establish this record before me and sign it for the purposes stipulated herein, and I do accordingly add my signature and seal:**

**My commission expires on:** APR 13 2024 .

**Ohio Public Notary** _____
                              Emmanuel Anagnostou

CERTIFCATE OF SERVICE

I hereby certify on this day, **9th of December, in the year 2023,** a true and accurate copy of the foregoing Motion. Notice of filing will be sent to all parties by operation of the courts electronic filing system. Parties who are not served via Court's electronic filing system, copies will be mailed USPS to other parties.

AUTOGRAPH BY: _____        James Sullivan

## CERTIFICATE OF SERVICE

The undersigned counsel states that this brief was filed electronically; that no paper copies were filed with the clerk of court. I certify that on this **9th of December, in the year 2023**, the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users, or, if they are not, by forwarding a true and correct copy by email and/or U.S. mail, to their address of record

EXHIBIT
(1281a)

## HAMILTON COUNTY, COMMON PLEAS COURT
### CINCINNATI OHIO
### 1000 MAIN STREET [45202]
### ROBERT RUEHLMAN OR ANY SUBSTITUTE THEREIN ROOM 300

| | |
|---|---|
| ROBERT RUEHLMAN<br>HAMILTON COUNTY SHERIFF'S<br>Et AL<br><br>**Counter Defendant**<br><br>v.<br><br>JAMES SULLIVAN<br><br>**Counter claimant**<br><br>James Sullivan C/O<br>3556 Wilson Ave.<br>Cincinnati, Ohio [ 45202]<br><br>**Counter claimant** | CASE NO. # B210049<br>M210049<br>M210051<br><br>MISSING TRANSCRIPT (M210050)<br><br>ORDER TO SHOW CAUSE<br>DUTY QUESTIONAIRE<br>HAMILTON COUNTY COURT<br>AND Et AL<br><br>MILLISA POWERS<br>MARK PIEPMEIER<br>230 EAST NINTH STREET # 4000<br>CINCINNATI, OHIO 45202<br>ATTORNEY FOR COUNTER<br>DEFENDANTS |

PLAINTIFF'S
EXHIBIT
1281a

BE IT REMEMBERED that upon the hearing of this cause, on January 15, 2021, before the Honorable Robert P. Ruehlman, a said judge of the said court, the following proceedings were had.

1

NOW COMES. James Sullivan. in Pro se and is one of the people of the United States. here in after called Victim and in this court of record in the above-captioned matter. under oath do hereby state and depose. my statement is made on personal firsthand knowledge. and I am competent to do so. I have made this statement in the State of Ohio in the. County of Hamilton. The following is events

[indistinct chatter]

SHERIFF UNKNOWN: It's pretty good. Pretty good. [inaudible]. That was good [inaudible].

SHERIFF UNKNOWN: No.

DEPUTY: SPEERS: Hello. How're you doing?

Mr. Gipson: Pretty good. How you be?

DEPUTY: SPEERS: Good.

Mr. Gipson: Think. Think, think, think, think, think, think, think. I think that'll be all right.

[GIPSON UNLOADING EFFECTS sound]

Mr. Gipson: I think I got some change.

DEPUTY: SPEERS: Okay.

Mr. Gipson: You know I have got some change.

DEPUTY: SPEERS: Okay.

Mr. GIPSON: Oh, right. I think-I think I'm-think I...

[object clatters]

DEPUTY: SPEERS: Good Lord.

Mr. Gipson: No, no, that's right.

2

Mr. Gipson: Okay. I think [breaths deeply] I think I might [inaudible]

[object clatters]

DEPUTY: SPEERS: Go ahead through. We'll see what happens if that went through. There you go.

Mr. Gipson: All right, thank you. [laughs]. I know that's right?

[indistinct chatter] Mr. Sullivan enters.

DEPUTY: SPEERS: Anything else?

Mr. Sullivan: Okay.

[object clattering]

[indistinct chattering]

[background noise]

DEPUTY: SPEERS: Anything else?

Mr. Sullivan: Okay.


DEPUTY: SPEERS: Excuse me, sir. Are you just recording us?

Mr. Gipson: No.

DEPUTY: SPEERS: Do you mind if I see your phone?

Mr. Gipson: I do mind.

DEPUTY: SPEERS: Okay. So we actually have a rule that's in place that you cannot record in this courthouse anymore. Are you aware of that?

Mr. Gipson: I'm not aware of that. Is that all?

DEPUTY: SPEERS: Have you been told about that?

Mr. Sullivan: Who said that? Is that...

DEPUTY: SPEERS: That's our new county's rule.

Mr. Sullivan: And what county commissioner said that?

3

DEPUTY: SPEERS: It's by the judges.

Mr. Sullivan: By the judges?

DEPUTY: SPEERS: Yes.

Mr. Sullivan: And their jurisdiction is within the court?

DEPUTY: SPEERS: Yes.

Mr. Sullivan: Rooms themselves?

DEPUTY: SPEERS: No, within the courthouse.

Mr. Sullivan: And that's 33 and three?

DEPUTY: SPEERS: No, it's 30.

Mr. Sullivan: Rule three.

Mr. Sullivan: We'll go, we're going to go, uh, there are 33 and 3 and two jurisdictions.

DEPUTY: SPEERS: its 30 not 3.

Mr. Sullivan: its Uh, separation powers.

DEPUTY: SPEERS: Listen, the new media [inaudible].

Mr. Sullivan: What can we see? Can we see it?

DEPUTY: SPEERS: Absolutely. Go to our office and we'll make sure there are two copies for you guys.

Mr. Sullivan: Wonderful.

DEPUTY: SPEERS: I think-you know what?

DEPUTY: SPEERS: There are so many people here.

Mr. Sullivan: No. We're going to [crosstalk]

DEPUTY: SPEERS: So then?

Mr. Sullivan: We're going to see someone else.

4

DEPUTY: SPEERS: Mr. Sullivan, now you can sit right there because the supervisor can attend to you.

Mr. Sullivan: We are going to Herdricks? Tell him we check.

DEPUTY: SPEERS: He no longer works here.

Mr. Sullivan: Where is he?

DEPUTY: SPEERS: He's retired.

Mr. Sullivan: He retired? [laughs]

DEPUTY: SPEERS: [inaudible]. We don't have one.

Mr. Sullivan: You don't have one?

Mr. Sullivan: Then who is in charge?

DEPUTY: SPEERS: Lieutenant Brogan.

Mr. Sullivan: [laughs] Oh, wonderful.

DEPUTY: SPEERS: I'm not sure if he's here but I'm sure [inaudible].

Mr. Sullivan: Well, go tell him to come on down [ crosstalk] I don't trust you

DEPUTY: SPEERS: That's fine.

Mr. Sullivan: I don't trust you.

DEPUTY: SPEERS: Do you mind standing that way so other people can get through?

Mr. Sullivan: They can come through, yeah.

DEPUTY: SPEERS: Can you step away so that people can have six feet? So they can social distance.

Mr. Sullivan: I've backed away from you.

DEPUTY: SPEERS: That's fine. I'm going to go back to court.

DEPUTY: SPEERS: If he's here.

Mr. Sullivan: Send him down.

5

DEPUTY: SPEERS: Okay.

Mr. Sullivan: Henderson is not here.

DEPUTY: SPEERS: Henderson is retired.

Mr. Sullivan: Henderson is retired?

DEPUTY: SPEERS: Of course.

Mr. SULLIVAN: We going to see Neil. Neil brought him, too. [inaudible]. Just what I thought. Yeah. Send him down. Send him down. Send him down because you have decided. Are you detaining me?

DEPUTY: SPEERS: No. I'm not.

Mr. Sullivan: Am I free to go?

DEPUTY: SPEERS: I'm asking you to say...

Mr. Sullivan: Am I free to go? Are you detaining me?

DEPUTY: SPEERS: No. I'm not.

Mr. Sullivan: Okay. I'm got to go now.

DEPUTY: SPEERS: Please, can I have...

Mr. SULLIVAN: Are you detaining me? Yes or no.

DEPUTY: SPEERS: I, am, I'm just I got to follow you.

DEPUTY: SPEERS: Okay.

Mr. Sullivan: Come on, follow me.

DEPUTY: SPEERS: Hey, look there.

CORPORAL: NICK HRNRYAK: What's going on?

DEPUTY: SPEERS: He was filming us while Sullivan [?] [inaudible].

CORPORAL: NICK HRNRYAK: Okay. Um, wait while we...

DEPUTY: SPEERS: I advised them both that they have two copies. They're like copies? I said that's no problem.

6

Sargent Dryer: Yeah.

DEPUTY: SPEERS: They can meet me up.

Mr. Sullivan: Are you Lieutenant Brogan. You got different hair?

CORPORAL: NICK HRNRYAK: Stand by for a second.

Mr. Sullivan: That's good.

CORPORAL: NICK HRNRYAK: I need to see your phone. If you recorded anything, uh, you're obviously in violation of our new policy. It's been updated. Okay?

Mr. Sullivan: Is that policy a law?

BAILIFF HAYSLIP: Uh, it's a courthouse policy.

Mr. Sullivan: Is it a law?

Mr. Sullivan: But she said, she said something over here. She said you're going to get Lieutenant Brogan, send him on down.

CORPORAL: NICK HRNRYAK: So, I need to see your phone.

Mr. Gipson: you're not seeing my phone.

CORPORAL: NICK HRNRYAK: Okay. We can take-Okay then can take you up in front of the presiding judge.

Mr. Gipson: It doesn't matter.

[crosstalk]

CORPORAL: NICK HRNRYAK: This is gonna be. I'm going to give you the short version.

Mr. Sullivan: Anything wrong?

Mr. Sullivan: That's Heather. That's Heather, Heather. We know her.

CORPORAL: NICK HRNRYAK: No, it's not her.

Mr. GIPSON: Oh, you going to...

CORPORAL: NICK HRNRYAK: I'm going to give you...

7

Mr. Sullivan: That is still kilbicki

CORPORAL: NICK HRNRYAK: I'll give you the short version. Okay?

Mr. Sullivan: I just wanna know what the law is.

CORPORAL: NICK HRNRYAK: Okay, this is what the new courthouse policy is regarding...

Mr. Sullivan: Policy is not a law sir.

CORPORAL: NICK HRNRYAK: Okay.

Mr. Sullivan: What's your name?

CORPORAL: NICK HRNRYAK : Um, corporal Nick Hrnyak.

CORPORAL: NICK HRNRYAK: Nick Hrnyak. Yes. So...

Mr. Sullivan: What's your badge number?

CORPORAL: NICK HRNRYAK: It's 1126.

Mr. Sullivan: 1126. That is fabulous. Thank you.

CORPORAL: NICK HRNRYAK: Ok, so basically the short version is...

Mr. Sullivan: Of your policy, not a law.

CORPORAL: NICK FRNRYAK: Yes.

Mr. Sullivan: Just make that statement clear.

CORPORAL: NICK HRNRYAK: You can no longer record...

Mr. Sullivan: Who's telling you to do this? Who's telling you to do this?

Corporal Nick Hrnyak: This is per the presiding judges.

Mr. Sullivan: Which judge is that?

[8;06] CORPORAL: NICK HRNRYAK: The pre-whoever is the presiding judge. I think it's Luebbers, the one who decided that.

Mr. Sullivan: Is Lubbers the new presiding judge? Kubicki was an old one?

CORPORAL: NICK HRNRYAK: She's the one presiding. Yes.

Mr. Sullivan:  Mr. Sullivan Yes.

Mr. Sullivan: So you're telling me, Luebbers is telling you to do this?

CORPORAL: NICK HRNRYAK: I'm not here to stand and argue with you.

Mr. Sullivan: I'm not arguing. I'm asking you.

CORPORAL: NICK HRNRYAK: You're not letting me talk. So I let you speak. You can let me talk or you can leave. Okay?

Mr. Sullivan: What's going on with these guys?

CORPORAL: NICK HRNRYAK: They're just down here because you're acting, you're acting a fool of yourself.

Mr. Sullivan: Ober. Roy. [crosstalk]

CORPORAL: NICK HRNRYAK: Are you guys going to leave? Okay, so let me explain to you [inaudible].

Mr. Sullivan: hey...

CORPORAL: NICK HRNRYAK: The new policy is [inaudible].

[crosstalk Ober]

[shouting Roy]

[indistinct chatter]

Mr. Sullivan: I'm asking these guys.

CORPORAL: NICK HRNRYAK: Okay. If you're going to...

CORPORAL: NICK HRNRYAK: I wanted to stay hi.

Guard: Excuse me, boss.

Mr. Sullivan: I wanted to say hi to all the guys

CORPORAL: NICK HRNRYAK: We go. Okay. So we haven't [inaudible]

LIEUTENANT: BROGAN: here we go...

9

CORPORAL: NICK HRNRYAK: So we have a Lieutenant and a Sargent. Come on James.

LIEUTENANT: BROGAN: First off, there can't be any yelling.

Mr. Sullivan: Okay. I'm just saying hi. How are you doing?

LIEUTENANT: BROGAN: How are you?

Mr. Sullivan: Wonderful. I didn't send you a Christmas card

LIEUTENANT: BROGAN: Good. I was looking for it.

Mr. Sullivan: Hendricks is gone,

LIEUTENANT: BROGAN: I know I was looking for it.

Mr. Sullivan: Hendricks is gone, just want to say hi to all the guys?

LIEUTENANT: BROGAN: why, I feel like I hear can here you on the 2nd floor.

Mr. Sullivan: you got good ears.

SARGENT: DRYER: What's the problem?

Mr. Sullivan: We came here to see someone.

SAEGENT: DRYER: Okay.

Mr. Sullivan: And, uh...

SARGENT: DRYER: I'm sure you were informed.

Mr. Sullivan: what are you sure about?

[crosstalk]

Mr. Sullivan: Where is your Speers? .

SARGENT: DRYER: I'm not sure if they informed you, that you can't record here any longer.

Mr. Sullivan: And I asked if that was policy or law.

SARGENT: DRYER: You're familiar with court rules, right?

Mr. Sullivan: Um, sir, sir, is that policy or law? I asked you a question. You have a duty to

answer.

SARGENT: DRYER: Are you recording right now?

Mr. Sullivan: I asked a question.

SARGENT: DRYER: Are you recording right now?

Mr. Sullivan: That's my business. That's not your business.

SARGENT: DRYER: well if you are.

Mr. Sullivan: I wanted to know if that's policy or not. Do you have a court order.

[indistinct chatter]

Mr. Sullivan: [laughter] I'm not.

SARGENT: DRYER: What do you want from us?

Mr. Sullivan: I want to see your court order. I wanna see who is telling you to do this.

SARGENT: DRYER: So, I'm saying, he was recording [inaudible]. He won't give us a number [inaudible]transfer.

CORPORAL: NICK HRNRYAK: And that's why I said I was in the process, explaining how we can do it in front judge if you're not...

[10:26] Mr. Sullivan: I don't see his signature, I don't see his signature. What is this for?

SARGENT: DRYER: We will just take them up in front of Judge Luebbers is she in [crosstalk]

LIEUTENANT: BROGAN: Look when you walk into the courthouse. Nick has advised you not to take photos in this courthouse. That's the rule for the court. That's the rules the judges lay down.

Mr. Sullivan: Which judge will sign it?

LIEUTENANT: BROGAN: It does not matter, The presiding judge is, judge Luebbers. We will take you up in front of judge Loebbers and she will take care of it, you can talk to her.

Mr. Sullivan: Let's go see Luebbers. Come on.

[indistinct chatter]

Mr. Sullivan: And you've been hiding out there, huh?

11

SARGENT: DRYER:  My office?

Mr. Sullivan: You've been hiding out in your office.

SARGENT: DRYER:  That's in plain sight.

[background noise]

Mr. Sullivan: Are we going to kilbicki in Pats office [indistinct chatter] policy we have been trying to get it of Pat for seven months. You're using a phone I the hallway.

[background noise]
SARGENT: DRYER: The court order excludes Police officers. Mr. Sullivan
Mr. Sullivan: I couldn't hear you. I was way down here.

SARGENT: DRYER: sorry I had my mask on. [background noise]
[indistinct chatter]

SARGENT: DRYER:  :hange of plans we are going to see Judge Nestor.

Mr. Sullivan: Wait a minute. Come up here. That's not the presiding judge?

SARGENT: DRYER: The presiding judge is not in the building right now.

Mr. Sullivan: Then you must make an appointment [crosstalk]. Come over here. Come over here.

CORPORAL: NICK HRNRYAK:  Walk away, he doesn't direct us.

[indistinct chatter]

Mr. Sullivan: you told me to see Judge Luebbers.

[14; 23] SARGENT: DRYER: And a phone call was made [inaudible] and we found out she's not here. And she directed us to go to Judge Nester.

Mr. Sullivan: It is Judge Nester. an administrative   Judge?

SARGENT: DRYER: Yes.

Mr. Sullivan: so, he's the presiding judge? Brogan you did a flim flam on us.

SARGENT: DRYER: There's nobody in Nesters either. I don't have the Judges schedules.

Mr. Sullivan: There is nobody here. And I, you know, [inaudible] I don't know either. Well, he said something about judge Luebbers. He decided to change his mind. [inaudible].

LIEUTENANT: BROGAN: I don't know what else to tell. It's a legitimate court order, it's on the Internet. I don't know what you want us to tell you. It's a legitimate court order [inaudible].

Mr. Sullivan: The Internet? Doesn't mean anything. We need wet ink signatures [inaudible].

LIEUTENANT: BROGAN: Then you don't need anything.

Mr. Sullivan: Yes. I do.

LIEUTENANT: BROGAN: It's a court order.

Mr. Sullivan: It wasn't signed.
LIEUTENANT: BROGAN: It was signed. Judge signed we don't have a signed. Copy it's signed. It's on the internet.

Mr. Sullivan: you got time to [indistinct chatter] He never signed it. We can go right to the clerk and get it.

[15:40] LIEUTENANT: BROGAN: [indistinct chatter] Avtab don't have anything to do with it.

Mr. Sullivan: He is the clerk we can go to 375, he has to sign it is public record, Brogan. You can't just make up your rules anymore. Brogan it is a made up Rule.

[crosstalk]

Mr. Sullivan: Then don't bullshit me anymore.

LIEUTENANT: BROGAN: I am not bullshit yah Do you think I just wrote this?

Mr. Sullivan: Yeah. I do. I do, [inaudible]. All you do, You guys sneak around you're not even here.

[crosstalk]

LIEUTENANT: BROGAN: You're a funny man.

Mr. Sullivan: I am not a funny man, I am serious man.

LIEUTENANT: BROGAN: You're funny [inaudible].

Mr. Sullivan: Yeah. Did we have [inaudible] with you and you?

[16:19] SARGENT: DRYER: Heekin is still here.

LIEUTENANT: BROGAN: Who, Heekin, Heekin, can we see him.

Mr. Sullivan: I know Heekin that's fantastic.

LIEUTENANT: BROGAN: Mr. Sullivan we you need get on the middle elevator [inaudible] here.

Mr. Sullivan: Heekin, 595. I like this elevator I don't trust that elevator. It was a non-union job.

SARGENT: DRYER: Well this one is the same as the one just before right here.

Mr. Sullivan: did Mr. Lennie ok that it was a union was he licensed

[crosstalk]

SARGENT: DRYER: You know where 595 is?

Mr. Sullivan: I know it is 595 is.

Mr. Sullivan: Don't worry. It's going to get better. There is too much stress with you guys. [background noise]

[indistinct chatter]

Mr. Sullivan: there will be better days. Don't worry not something you should get upset about.

DEPUTY: OBER I am not upset at all.

[movements]

[background chatter]

Mr. Sullivan: You don't have a broken leg you can go quicker.

[background conversation]

[movements]

Female Attendee 1: Hello.

Mr. Sullivan: Hey how is it going?

Female Attendee 595: fine how are you.

SARGENT: DRYER: Wonderful.

SARGENT: DRYER: Ok where good you got to wait outside.

Mr. Sullivan:   Oh, I thought this was public court area.

SARGENT: DRYER: Ok

Mr. Sullivan: I know what you told him.

SARGENT: DRYER: Ok

Mr. Sullivan: is he going to come and see us.

SARGENT: DRYER: No.

Mr. Sullivan: Why not?

Mr. Sullivan: what's wrong [inaudible]?

James: I might just need a

JUDGE HEEKIN: You need to go down today. How are you?

Mr. Sullivan: Wonderful. Good to see you. I' haven't seen you in while.

[20:04] JUDGE HEEKIN: You need to go down see JUDGE RUEHLMAN. Room, he's the presiding judge.

Mr. Sullivan: Is the new, they sent us to, two or three presiding judges.

JUDGE HEEKIN: I know. Now it's JUDGE RUEHLMAN.

JUDGE HEEKIN: Just trying to make sure you're in the right place.

Mr. Sullivan: Okay. Thank you.

JUDGE HEEKIN: You're welcome.

Mr. Sullivan: You're great. All right.

Mr. Sullivan:   Come on, Brogan let's go. He's okay. What are you doing rating me out or something? You didn't prejudice any of the judges did you?

Mr. Sullivan: that's a 601 violation

LIEUTENANT: BROGAN:  you're a funny man

15

Mr. Sullivan: don't take you job to serious.

Mr. Sullivan: Now Hold on. My busted leg hurts.

LIEUTENANT: BROGAN: Okay.

Mr. Sullivan: Okay.

Mr. Gipson We will be going down.

Mr. Sullivan: We got a new guy now. Where are we going ?

SARGENT: DRYER: JUDGE RUEHLMAN

Mr. Sullivan: 410?

SAEGENT: DRYER 300.

[coughing]

Mr. Sullivan: Brogan going to violate my 1st amendment rights he going to have some serious problems,

Mr. Sullivan: Hey I'm not going to make my appointment.

[coughing]

Mr. Sullivan: Hey. How's it going guys ?

Mr. Gipson: Hey illegal shit.

Mr. Sullivan: Yeah.

Mr. Gipson: illegal shit.

[silence]

Mr. Sullivan: How's it going

Mr. Sullivan: All the memories are coming back when I had to walk.[inaudible]?

Mr. Sullivan: Hey got to get in quick Dryer.

16

CORPORAL: NICK HRNRYAK [inaudible] So it would be 7 1.

[background conversation]

Mr. Sullivan: Where are you going DRYER?

[background conversation]

SARGENT: DRYER: same place you are, Sullivan. [inaudible]

Mr. SULLIVAN: What did they tell you?

[24:50] CORPORAL NICK HRNRYAK: They didn't tell us anything. We are trying to get you the right person, the right courtroom.

Mr. Sullivan: Now you are detaining me?

CORPORAL NICK HRNRYAK: No.

Mr. Sullivan: You said you were.

CORPORAL NICK HRNRYAK: Who said who is detaining you?

Mr. Sullivan: You said that in the hallway. You said you're detaining me [coughing]
This is the third Judge.

CORPORAL NICK HRNRYAK: No one said.

Mr. Sullivan: [coughing] so we don't have to go in here.

SARGENT: DRYER: If you want understand how that court Rule works.

I have explained to you, if you wanna leave, you can leave but again you are not allowed to report here [inaudible].we trying to.....

Mr. Sullivan: I am in a public area right now. That's a different area.

SARGENT: DRYER: they'll explain it to you. Ok.

[crosstalk]


Mr. Sullivan: why is prejudicing, why is he in there prejudicing him right now. I have to have all the records. I need a court reporter.

Mr. Sullivan: You are running all these hallways and you are not telling me?

SARGENT: DRYER: I am going to escort you. I am not running this court.

SARGENT: DRYER: They are going explain to you, okay? You can argue or you can come in and talk to the Judge.

SARGENT: DRYER: Okay. You can argue or you can come in and talk to the Judge.

[26:05] SARGENT: DRYER: [Yells] you're not supposed to pass the bar Mr. Sullivan, have a seat

Mr. Sullivan: What bar, what bar ? [indistinct chatter]

SARGENT: DRYER: right here.

Mr. Sullivan: You didn't specify that.

Mr. Sullivan: Keep recording everything. Everything

[coughing]

[indistinct chatter]

[coughing]

[indistinct chatter]

CORPORAL NICK HRNRYAK: I didn't even try to maintain the six feet so it doesn't matter. So

Mr. Sullivan: I want to go [inaudible].

CORPORAL NICK HRNRYAK: It doesn't matter. You're still within a foot of a row, so.

[28:00] Mr. Sullivan: I don't [inaudible].

CORPORAL NICK HRNRYAK: All right.

DEPUTY OBER: I don't need it.

CORPORAL NICK HRNRYAK: Okay.

Mr. Sullivan: I had to donate masks for you guys because you wouldn't wear them. Remember when I donated masks when the county wouldn't pay for them. Do you remember when I donated masks remember that. You weren't there.

[background conversation]

Mr. Sullivan: Of course. Yeah.

18

BAILIFF HAYSLIP: Okay, I will give you a claim ticket for it. But we collect cellphones in this courtroom. Part of our rule.

Mr. Gipson: What are you talking about?

BAILIFF HAYSLIP: It's part of our rules. We collect cell phones in this courtroom.

Mr. Gipson: No, I'm just. Uh, we came here voluntarily.

Mr. Sullivan: And in a public area.

Mr. Sullivan: These deputies.

Mr. Gipson: And...[crosstalk]

[29:19] BAILIFF HAYSLIP: Hey, hey It doesn't matter. [Yells]

BAILIFF HAYSLIP: I am the Bailiff in this room. And you guys are going sit there and you're going and abide by all rules in this courtroom. And if you have a cellphone, you will turn in it, I will give you a claim ticket, and then you can get it at the end of the court.

[crosstalk]

BAILIFF HAYSLIP: That is the rule. Am not arguing with you guys. Am not arguing with you people.

[crosstalk]

Mr. Gipson: You didn't tell me that.

BAILIFF HAYSLIP: I will give you a claim ticket, I will give you a claim ticket.

Mr. Gipson: I am not going do anything.

[indistinct chatter]

BAILIFF HAYSLIP: right over there top of that, I have two claim tickets.

Mr. Sullivan: Make sure that I get the right cellphone back. I want the right cell phone back

BAILIFF HAYSLIP: You are the only two people in this room.

Mr. Sullivan: Okay, Well just in case.

SARGENT DRYER: [Interrupts]

Mr. Sullivan: I, Am not talking to you. She's running the courtroom.

BAILIFF HAYSLIP: All right. Do you have an iPhone?

Mr. Sullivan: No.

[indistinct chatter]

Mr. Gipson: That's my personal. It's not a phone.

BAILIFF HAYSLIP: I need that too. I need that too. So you have 16, this one, 15, and I need that one too.

Mr. Gipson: Do I get another number?

BAILIFF HAYSLIP: Yes you can, I put them in the same record. You are the only two people in here.

Mr. Gipson: This is not a cellphone ma'am.

SARGENT DRYER: It is an electrical device that is capable of recording.

Mr. Gipson: That ain't what she said, ma'am, sir.

BAILIFF HAYSLIP: We'll give you the right cell phones.

Mr. Sullivan: Why are you getting on this to this man?

[indistinct chatter]

Mr. Gipson:  she's said she is going to take my phone, we came up here voluntary we did't need we don't have to come up here

[30:59] SARGENT DRYER: he's going to produce an order

CHRIS COLINI: Are you going to follow the rules of this court?

Mr. Sullivan: Of course.

CHRIS COLINI: Give him the device

Mr. Sullivan: What is your name sir?

20

CHRISTOPHER COLINI: Christopher.

Mr. Sullivan: What is your last name.

BAILIFF CHRISTOPHER COLINI: Colini.

Mr. Sullivan: Nice to meet you.


[crosstalk]

BAILIFF HAYSLIP: thank you, these two need to stay together, that goes in 16 and that one goes in 17.

BAILIFF CHRISTOPHER COLINI: You're on judge,

BAILIFF 3: Yeah

BAILIFF CHRISTOPHER COLINI: I got what I needed. Can I borrow a pen?

[indistinct chatter]

Female Attendee 1: Do you have any [inaudible]?

CHRISTOPHER COLINI: Do you want me to get our contempt papers.

BAILIFF HAYSLIP: No

BAILIFF CHRISTOPHER COLINI: We got a court reporter coming in. you got a court reporter coming in

 [inaudible].

[31:48] Female Attendee 1: do you have any stickers?
[DOOR] 40:45
[DOOR] 41:59
[DOOR] 43:29


[background conversation]

Female attendee 1: Okay, now, we'll hear them. You guys will see it through.

BAILIFF HAYSLIP: That's okay. Let's see this. You guys change the [inaudible]. All the bails in

the [inaudible]. And give him about 20[?] [inaudible].

[indistinct conversation]

[introductory howling sound]

Male Attendee 3: Is that Hope?

BAILIFF HAYSLIP: No. Chris.

Male Attendee 3: Hi.

[indistinct conversation]

BAILIFF HAYSLIP: I mean, straight like this. [inaudible]

[indistinct conversation]

Female attendee : Okay.

[indistinct conversation]

Female attendee : 400 [inaudible].

[indistinct conversation]

Female attendee : How many years are you together?

Male Attendee : Forever.

BAILIFF HAYSLIP: Oh my God.

[indistinct conversation]

Female attendee : So, have you guys work?

Male Attendee : I never really do that.

BAILIFF HAYSLIP: Okay.

[indistinct conversation]

Male Attendee : Is he [inaudible]?

[indistinct conversation]

Chris: Okay.

[indistinct conversation]

Male Attendee : I'm sorry [inaudible].

Chris: Hello.

[indistinct conversation]

Male Attendee 1: All right. We'll be, in within a second.

[indistinct conversation]

BAILIFF HAYSLIP: [inaudible] going to share this with them?

Chris: I'm sorry.

Female attendee 2: Can you see this and share this, [inaudible]?

Chris: [inaudible]. I can't hear you [inaudible] but I can.

[indistinct conversation]

Chris: By myself.

[indistinct conversation]

Chris: Oh well, my soccer.

BAILIFF HAYSLIP: [inaudible]

Chris: What are you going to find, ma'am?

BAILIFF HAYSLIP: Are you going to move to this one, my friend?

Chris: I'm thinking about moving that one over here.

Female attendee : Okay.

Chris: But yes.

Male Attendee : Okay, um, [inaudible] yes, yes.

[indistinct conversation]

Chris: Thank you.

BAILIFF HAYSLIP: You're welcome.

Chris: [inaudible], come over here for that.

[indistinct conversation]

Female attendee : Hi. How are you?

Male Attendee 1: We are fine.

BAILIFF HAYSLIP: So this could be in here?

[indistinct conversation]

BAILIFF HAYSLIP: Okay. Was that helpful?

Male Attendee 2: That one right here, no [inaudible].

Female attendee 1: Okay. I already put the dates, so.

BAILIFF HAYSLIP: No, but, I mean [inaudible]. Yeah.

[indistinct conversation]

Female attendee 2: Okay.

[indistinct conversation]

Female attendee 2: Morning.

Female Attendee 1: Hey morning. 1-3-2-2-3-2-4-2-5-6

[indistinct conversation]

Female attendee 2: I mean, would you really, do you have [inaudible]? Do you have one?

Female attendee 3: Yes, [inaudible].

Female attendee 2: Oh, you're a [inaudible] student?

[indistinct conversation]

Female attendee 3: Thanks.

[indistinct conversation]

Female attendee 2: Yeah.

[indistinct conversation]

Female attendee 3: No, it's not. It's not [inaudible].

[indistinct conversation]

[43:29] BAILIFF HAYSLIP: Morning, judge.

JUDGE RUEHLMAN: Morning.

BAILIFF HAYSLIP: All rise. The County Court of common pleas of
Robert Ruelhman in session is now of order. Please be seated and remain quiet.

JUDGE RUEHLMAN: Bring these two gentlemen up and have their testimonies as to what
happened.

BAILIFF CHRISTOPHER COLINI: [inaudible]

JUDGE RUEHLMAN: Yes. Right there. This is direct contempt hearing. Uh, somebody might
be going to jail here today. We'll find out. First of all, do you want tell us, first of all, what
happened? Maybe just stand there. That's fine.

DEPUTY OBER: Uh, well Officer Speers was kind of the initial.

Okay. Just state your name and tell us what happened.


JUDGE RUEHLMAN: Tell us your name. Just state your name and tell us what happened.

DEPUTY SPEERS: Oh. Okay.

DEPUTY SPEERS: Madison Stewart, M-A-D-I-S-O-N -S-P-E-E-R-S.

JUDGE RUEHLMAN: Okay.

DEPUTY SPEERS: Um, I was a Post in the lobby downstairs. This gentleman came through,
with no issues. Mr. Sullivan came through. He allowed us to want...

JUDGE RUEHLMAN. Who is this gentleman?

DEPUTY SPEERS: I do not have his name, sir.

25

JUDGE RUEHLMAN: You don't have his name. What is your name?

Mr. Gipson: David Gipson.

JUDGE RUEHLMAN: What?

Mr. Gipson: David Gipson.

JUDGE RUEHLMAN: David Gipson? Okay.

Deputy SPEERS: Um, Mr. Sullivan came through.

JUDGE RUEHLMAN: And what's your name?

Mr. Sullivan: Excuse me. Um, my name is James Sullivan.

JUDGE RUEHLMAN: Jake Sullivan?

Mr. Sullivan: James.

JUDGE RUEHLMAN: James Sullivan.

[44:52] Mr. Sullivan: They said they would bring us to the presiding Judge that, what these officers said.

JUDGE RUEHLMAN: Huh?

JUDGE RUEHLMAN: I just want to know your name. What's your name?

Mr. Sullivan: My name's James Sullivan.

JUDGE RUEHLMAN: I'll hear from you in a minute quite. Go on

Deputy SPEERS: Mr. Sullivan came through. Mr. Gipson had already come through. He was standing in the corner, kind of by the Deli corner by the Deli and he had his phone out recording. Deputy Dews and I, saw him.

JUDGE RUEHLMAN: Who is recording?

DEPUTY SPEERS: Mr. Gipson.

JUDGE RUEHLMAN: Mr. Gipson was?

DEPUTY SPEERS:
Yes. I stepped over there. I...

[45:17] JUDGE RUEHLMAN: Where's his phone? Did you get the phone?

DEPUTY SPEERS: No, judge.

JUDGE RUEHLMAN: Where is it?

BAILIFF CHRISTOPHER COLINI: Yes it's right behind me, sir.

DEPUTY SPEERS: I, m sorry I did not receive it at the time

JUDGE RUEHLMAN: You have it?

BAILIFF CHRISTOPHER COLINI: Yes, sir.

[45:26] JUDGE RUEHLMAN: Oh but we can't open it. well Go get it then. Well, maybe we can resolve this problem, and play the video. Play it. Can you open your phone? Play the video.

[45:38] Mr. Sullivan: I, I didn't have, I have a phone with it but it wasn't on. she said something...

JUDGE RUEHLMAN: Well, let's see if it's not.

Deputy SPEERS: Its Mr. Gipson, judge.

[45:41] BAILIFF CHRISTOPHER COLINI: Its Mr. Gipson's sir.

JUDGE RUEHLMAN: Mr. Gipson's phone. Mr. Gipson's phone that he had on.

JUDGE RUEHLMAN: Mr. Gipson. Okay.

DEPUTY SPEERS: Yes.

The Court: Okay.

DEPUTY SPEERS: Um, I asked him if he was recording.

JUDGE RUEHLMAN: Oh, I thought you saw. Okay. I'm sorry I sorry I got this mixed up, but whose phone does it belong to?

DEPUTY SPEERS: Mr. Gipson had it in, in his hands.

JUDGE RUEHLMAN: So it's his phone. Okay.

DEPUTY SPEERS: I would assume so. Yes.

The Court: Well, let's see if you were recording or not. If you were recording, you're fine.

DEPUTY SPEERS: Yes.

The Court: You're not allowed to record here. But you know that's contempt of "law" offense. Did you record it or not?

Mr. Gipson: I didn't record, Sir.

JUDGE RUEHLMAN: Well, let's see if you did. Open it up. Show me. If you were recording it'll be on there.

JUDGE RUEHLMAN: I'll swear you in raise your right hand.

JUDGE RUEHLMAN: ? Do you swear to testimony about will be the truth the whole truth and nothing but the truth so help you God.

[46:16] BAILIFF CHRISTOPHER COLINI: is it this one, is it this one

[46:26] BAILIFF HAYSLIP. Which is it the IPAD or the phone.

JUDGE RUEHLMAN:? You swear that?

Mr. Gipson: Yes, sir.

JUDGE RUEHLMAN: Okay. Now here's my question. You're under oath. Did you or did you not record? And we can always get the forensic guys here if you don't open up. Did you or did you not record?

Mr. Gipson: In a public place witness, you're Honor.

JUDGE RUEHLMAN: wait, the question is yes...

Mr. Gipson: I used, my phone.

JUDGE RUEHLMAN: Wait, the question is yes or no. Easy. You're under oath.

Mr. Sullivan:  His First Amendment right. Public work area. First Amendment.

JUDGE RUEHLMAN: wait stop be quite or you will go to jail right now. Shut up because I didn't ask you anything.

Mr. Sullivan: I'm sorry. I'm sorry.

28

[47:00] JUDGE RUEHLMAN: so shut up and be quite...you did you Mr. David Gipson record anything now tell us the truth   anything coming in. from you.

[47:02] Mr. Gipson: I used my phone, sir.

[47:05] JUDGE RUEHLMAN: Did you record it? Wait, stop. It's yes or no. No bullshit. Yes or no. Did you record anything?

[47:11] Mr. Gipson: I answered my phone. and I walked around.

JUDGE RUEHLMAN: Did you record anything?

JUDGE RUEHLMAN: Did you record anything?

[47:14] Mr. Gipson: I do everything.

[47:16] JUDGE RUEHLMAN: I can tell you why you did it. You recorded, you were recording.

[47:19] Mr. Gipson: I'm in a public area, sir, uh, judge.

JUDGE RUEHLMAN: You're not allowed to record it. Did you record anything?

Mr. Gipson: And then like he brought up orders.

JUDGE RUEHLMAN: Just answer the question. Because we're going to open it up and then you're going to be, did you record anything? Yes or no? If it's, no, no. Yes, you did.

Mr. Gipson: No, no, no, I, I'm...

JUDGE RUEHLMAN: You didn't record anything?

Mr. Gipson: No, I...

JUDGE RUEHLMAN: Well then open it up.

Mr. Gipson: Well, I'm not opening up my phone, sir. I don't want...

JUDGE RUEHLMAN: We'll, we'll get it open.

Mr. Gipson: It's a personal phone. I mean, as I got...

JUDGE RUEHLMAN: You're going to sit in jail until we get it open. Okay? So you can open it now and have a shorter jail stay, or if we have to do the forensics.

[47:55]Mr. Gipson: What about my First Amendment rights, sir?

29

JUDGE RUEHLMAN: "You don't have any", you, you've lost a lot of your rights because you're recording, you violated the "law". We're not talking about First Amendment rights. You're not allowed to record.

Mr. Gipson: In a public area.

JUDGE RUEHLMAN: So the question I'm going to ask you one more time, you said you can [inaudible], if we find out. You just answered you didn't record. So I'll refer to the prosecutor. It's a felony of third-degree. It carries three years in prison for lying under oath.

I just swore you in. You're getting yourself deeper in trouble. You're much better if you just admitted, so, I mean, if you're going to sit here and try to sweep for the bleachers for the big home run ball, you're going to get in trouble. You better just admit it.

Gipson. Sir, I'm going .

JUDGE RUEHLMAN: Listen to me. You said you're sticking to that story. You did not record it?

JUDGE RUEHLMAN: Understand?

Mr. Gipson: I want all my rights

JUDGE RUEHLMAN: Did you record anything?

Mr. Gipson: I want all my rights. No, I do not want to surrender any of my rights, sir.

JUDGE RUEHLMAN: Did you record anything? You just said you didn't, right?

Mr. Gipson: I want all my, I want to...

JUDGE RUEHLMAN: Are you sticking to that answer?

Mr. Gipson: I, I'm going to exercise all my constitutional rights. I'm going to take the film, okay?

Mr. Sullivan: take the 5th

JUDGE RUEHLMAN: Well, you already answered.

Mr. Gipson: I haven't answered.

JUDGE RUEHLMAN: You did, you said you didn't record anything. So I wanted to ask you and

you said he was recording, right?

[49:02] Deputy SPEERS: Yes, sir.

JUDGE RUEHLMAN: Can we open that up? You won't open it up for us, right?

Mr. Gipson: I'm not going to.

JUDGE RUEHLMAN: Let's get the guys to open it up and then we'll continue the hearing. He's locked up until then. We'll continue our [inaudible] trials in progress. Yeah. [inaudible] And, uh, and also out and what's causing one other problem, right?

DEPUTY SPEERS: Yes, judge. When I attempted to ask him if he would show me his phone, he refused. Mr. Sullivan stepped over and started yelling at me, getting very close, not socially distancing.

JUDGE RUEHLMAN: Well, he was yelling at you too?

DEPUTY SPEERS: Yes, Judge.

JUDGE RUEHLMAN: [inaudible]. So what was he saying to you?

DEPUTY SPEERS: Um, at this point, Ms. Uh...

[49 49] JUDGE RUEHLMAN: Because I did hear a lot of yelling. I was [inaudible] in the court. Who's yelling in court? Who's the one yelling, screaming, and yelling? Okay. He's got three days to contact. He [inaudible].

DEPUTY SPEERS: Okay.

[50 00] JUDGE RUEHLMAN: Because I heard yelling. We're disrupting the entire courthouse. He gets three days. Okay, you, you're locked up until Tuesday and we'll continue this hearing. Have the forensic guys look into this. See if Dave [inaudible].

Mr. Gipson: Okay.

[50 10] JUDGE RUEHLMAN: Officer Dave does all the forensic stuff. See if he can open that phone up. Is it an Apple or what is it?

BAILIFF CHRISTOPHER COLINI: It's, it's an iPhone, apple.

JUDGE RUEHLMAN: [inaudible]

[50 21] CORPORAL: NICK HRNRYAK: Now Judge while they're here, I know they did want an explanation as far as the news, they wanted someone to tell them, you know.

31

JUDGE RUEHLMAN: Here's the new rule.

[50 25] CORPORAL: NICK HRNRYAK: That they're not allowed. So if we can cover this that way, they can't plead against slate...

[50 26] JUDGE RUEHLMAN: hers the new rules you want to explain to them so they know in the future?

[50 27] CORPORAL: NICK HRNRYAK: Right.

[50 28] JUDGE RUEHLMAN: The new rules?

[50 29] CORPORAL: NICK HRNRYAK Absolutely.

[50:31] JUDGE RUEHLMAN: The new rule is they cannot, they cannot record in this courthouse. That's the rule. Do you guys understand that? And no disruption. I don't why you come in and cause trouble.

[50:50] JUDGE RUEHLMAN: Also, you told me too, the other thing they did when they claimed they can't go through the metal detector, right?

DEPUTY SPEERS: Yes, judge. Um, Mr. Sullivan has made multiple complaints that he is unable to go through the metal detector, I believe due to some metal in his leg.

JUDGE RUEHLMAN: so you went along with that. Because he claims he has metal in.

DEPUTY SPEERS: Yes, judge.

[51:04] JUDGE RUEHLMAN: So you went along with him. What did he say then when you patted him down?

DEPUTY SPEERS: He, he is waned, um, if he allows us to want him, um, for mental purposes. Sometimes he does no' waned. We have to offer a male officer, which at that point usually says derogatory terms towards our male officers because he is being thoroughly searched.

JUDGE RUEHLMAN: Calls them what ah?

Deputy SPEERS: Homosexuals. I, I have...

JUDGE RUEHLMAN: He uses, you said you used the term faggot or something like that?

CORPORAL: NICK HRNRYAK He used his many.

CORPORAL: NICK HRNRYAK He's used many in his timed down here in the courthouse.

JUDGE RUEHLMAN: See, that's not good. Did you do that today too? Yeah.

LIEUTENANT: BROGAN I talked to him, I mean, like, we tried to show him.

JUDGE RUEHLMAN: Did he do that today with you too?

LIEUTENANT: BROGAN: Yeah. I mean, Like today we tried to show him court rule 30 he thinks I drew this up.

JUDGE RUEHLMAN: You showed him a court order.

LIEUTENANT: BROGAN: Yeah. He thinks that I drew this whole rule up the whole rule or showed.

Mr. Sullivan: Objection. All I said was I'd like to see it signed. That's all I said.

[52:00] JUDGE RUEHLMAN: Oh geez, I don't want to hear from you stop interrupted me.

JUDGE RUEHLMAN: shut up,

Mr. Sullivan: I, sorry I sorry.   Ok, wonderful.

JUDGE RUEHLMAN:  go on.

LIEUTENANT: BROGAN: He, he's is constantly challenging us on everything. Doesn't believe anything we tell him. We tried to show him the court rule well, he thinks that I wrote it.

JUDGE RUEHLMAN: Yeah, well he didn't, we wrote it. "THE JUDGES".

Mr. Sullivan: Wonderful, wonderful.

[52:20] JUDGE RUEHLMAN: He disrupted, I could hear him in my office screaming, yelling at you. So that's three days for doing that.

[52:24] You, though on the other hand, could really solve this problem right away and just be honest. Show us the video.

Mr. Gipson: Uh, um. Sir, I am.

[52:30] JUDGE RUEHLMAN: You answered it you didn't report it, so I got you under oath.

[52:45] JUDGE RUEHLMAN: If that video then comes up and you were videoing. I'm referring to the prosecutor for a, uh, for uh, a perjury charge. So it's up to you. You have one last chance.

[52:49] Mr. Gipson: Judge, I want to take, all my constitutional rights. I want to, uh...

[52:56] JUDGE RUEHLMAN: Okay good, ok get him out of here. You'll be back on Tuesday

and join Your friend.

BAILIFF CHRISTOPHER COLINI: And then Sullivan's phone as well. Do you want to get your tickets back?

BAILIFF HAYSLIP: I'll be confiscating Mr. Sullivan's phone?

JUDGE RUEHLMAN: Yeah.

BAILIFF HAYSLIP: And then this is, um, Mr. Gipson's phone?

[53:17] BAILIFF CHRISTOPHER COLINI: So, you guys want to hold.

[53:19]J UDGE RUEHLMAN: We want to look in to, you can take the one down to forensics. We'll see if can get. Take down to Forensics.

[53:24] JUDGE RUEHLMAN: We won't confiscated it right now.

[53:25] BAILIFF CHRISTOPHER COLINI: first this Tuesday morning,

[53:26] JUDGE RUEHLMAN: first this Tuesday morning,

[53:30] BAILIFF HAYSLIP: You need me to take the phone.

[53:32] JUDGE RUEHLMAN: I plan on leave them here.

[53:34] CORPORAL: NICK HRNRYAK: I'll reach out I don't know what can be done as far as.

[53 36] JUDGE RUEHLMAN: don't you want to take down to forensics. Guy right now.

[53 37] BAILIFF CHRISTOPHER COLINI: So, you guys want to hold.

[53 43] CORPORAL: NICK HRNRYAK: I' don't know if a court order will get it. Or we have to write a search warrant.

[53 47] BAILIFF HAYSLIP: Well if write a search warrant we can sign it.

[53 48] CORPORAL: NICK HRNRYAK: well I know that at minimum we got to get a search warrant. I don't know if we can take care of that

[53 53] BAILIFF HAYSLIP: Okay. Do what you guys got to do.

[53 56] CORPORAL: NICK HRNRYAK: I don't know if we can take care of that

[53 58] JUDGE RUEHLMAN: Okay I'll sign a search warrant anytime. I'll be at home today if you want to bring it by I'll sign it.

[54 12] BAILIFF CHRISTOPHER COLINI: do you want me to write up the contempt papers.

[54 15] JUDGE RUEHLMAN: We'll do that right now.

[54 21] BAILIFF HAYSLIP: Chris I'm going to put this over here.

[54 28] BAILIFF HAYSLIP: You want me to put it in the top draw.

[54 35] JUDGE RUEHLMAN: James Sullivan for disruption.

BAILIFF HAYSLIP: Chris?

[indistinct conversation]

BAILIFF HAYSLIP: Wait. He said that [inaudible].

BAILIFF CHRISTOPHER COLINI: [inaudible]

[background conversation]

BAILIFF HAYSLIP:Oh, yeah, yeah.

BAILIFF CHRISTOPHER COLINI: [inaudible]

BAILIFF HAYSLIP: No, I'm not going to [inaudible].

[indistinct conversation]

BAILIFF CHRISTOPHER COLINI: You're handwriting it like that?

BAILIFF HAYSLIP: [inaudible] Yeah.

BAILIFF CHRISTOPHER COLINI:  She said [inaudible].

BAILIFF HAYSLIP: Huh?

BAILIFF CHRISTOPHER COLINI: Uh, she said, [inaudible].

BAILIFF HAYSLIP: Oh, she said [inaudible].

BAILIFF CHRISTOPHER COLINI: [inaudible]

BAILIFF HAYSLIP: Yeah.

BAILIFF CHRISTOPHER COLINI: [inaudible]

BAILIFF HAYSLIP: I unink she found it right now.

[indistinct conversation]

JUDGE RUEHLMAN: You're welcome.

BAILIFF CHRISTOPHER COLINI: First-time game ball.

JUDGE RUEHLMAN: Which game ball?

BAILIFF CHRISTOPHER COLINI: I will, I will. We tried to get him to a game of soccer last week, but [inaudible].

[indistinct conversation]

JUDGE RUEHLMAN: It's going to be a search warrant [inaudible].

BAILIFF CHRISTOPHER COLINI: Right.

JUDGE RUEHLMAN: [inaudible]

BAILIFF HAYSLIP: Yeah. So get into it [inaudible].

[indistinct conversation]

BAILIFF CHRISTOPHER COLINI: Somebody [inaudible].

[indistinct conversation]

BAILIFF CHRISTOPHER COLINI: Yes, he is.

[indistinct conversation]

BAILIFF HAYSLIP: Down here.

[indistinct conversation]

BAILIFF CHRISTOPHER COLINI: Yes sir. Okay. Yes sir.

[indistinct conversation]

BAILIFF HAYSLIP: Huh?

36

[indistinct conversation]

[56: 55] BAILIFF HAYSLIP: That is not my water. I don't know whose water that is. Okay, we'll take it down. Thanks for that.

BAILIFF CHRISTOPHER COLINI: You're welcome. Sorry, we had a [inaudible].

BAILIFF HAYSLIP: No, I love it. I said, what excitement on my last day. I said I'm going to go out there and...

[inaudible]

BAILIFF HAYSLIP: Go down.

BAILIFF CHRISTOPHER COLINI: Okay. Just [inaudible] you want?

[indistinct conversation]

JUDGE RUEHLMAN: I think you might want to be ready.

[indistinct conversation]

BAILIFF CHRISTOPHER COLINI: Uh, do you just want to call back? Uh, for the work.

JUDGE RUEHLMAN: But I mean [inaudible].

[57: 52] BAILIFF HAYSLIP: I do. I've always been tied out a little. Um, I've always been a little skeptical. I'm not skeptical, but leery of that [inaudible] look like a [inaudible] car.

BAILIFF CHRISTOPHER COLINI: They need a bigger square.

BAILIFF HAYSLIP: Yeah, [inaudible] I tried. I tried. I tried to [inaudible] all.

BAILIFF CHRISTOPHER COLINI: I'm going to slowly walk the way back.

JUDGE RUEHLMAN: I'm going to hide it and slowly walk to the bank as well.

BAILIFF CHRISTOPHER COLINI: [inaudible] alley.

[58: 17] BAILIFF HAYSLIP: Oh. Can you text Kate and tell her you guys are walking to the bank or [inaudible]?

[indistinct conversation]

[58: 24] BAILIFF HAYSLIP: Um, yes.

BAILIFF CHRISTOPHER COLINI: I did.

BAILIFF HAYSLIP: Oh, you did?

[58: 29]BAILIFF CHRISTOPHER COLINI: Sullivan three days. [inaudible]

[58: 42]BAILIFF HAYSLIP: So, yeah. Sullivan got three days and uh [inaudible].

BAILIFF CHRISTOPHER COLINI: [inaudible]

BAILIFF HAYSLIP: [inaudible], maybe take another Thursday now. Put a date on. You're terrible with it. [inaudible]

BAILIFF CHRISTOPHER COLINI: [inaudible]

BAILIFF HAYSLIP: It's true. [inaudible] back door. Tuesday [inaudible].

BAILIFF CHRISTOPHER COLINI: Well, they were.

BAILIFF HAYSLIP: But I was [inaudible] out. [inaudible]

BAILIFF CHRISTOPHER COLINI: [inaudible]

[indistinct conversation]

BAILIFF CHRISTOPHER COLINI: Did you do the paperwork?

CORPORAL: NICK H?NRYAK: No. I just [inaudible].

BAILIFF HAYSLIP: Okay. I think [inaudible].

BAILIFF CHRISTOPHER COLINI: [inaudible], anything carries if you know that last sentence [inaudible] person.

BAILIFF HAYSLIP: Okay.

BAILIFF CHRISTOPHER COLINI: [inaudible]

JUDGE RUEHLMAN: You still here?

BAILIFF CHRISTOPHER COLINI: Yeah.

BAILIFF HAYSLIP: Yeah.

BAILIFF CHRISTOPHER COLINI: So this is [inaudible]

BAILIFF HAYSLIP: [inaudible]

[silence]

[1:03: 49] [phone ringing]

[door opens]

[door closes]

[indistinct conversation]

BAILIFF HAYSLIP: All right.

BAILIFF CHRISTOPHER COLINI: So this is [inaudible].

BAILIFF HAYSLIP: [inaudible]. Yeah. [laughter] [inaudible]. Are you [inaudible] what you want? Are you comfortable [inaudible]?

BAILIFF CHRISTOPHER COLINI: [inaudible].

BAILIFF HAYSLIP: Yeah Gipson: I really don't know. I was wrong of course.

BAILIFF HAYSLIP: Yeah.

BAILIFF CHRISTOPHER COLINI: After this hearing, you'll come back? Or I'll need to call you back.

[laughter]

BAILIFF HAYSLIP: Thank you. Good luck.

[door slams]

[silence]

BAILIFF HAYSLIP: Hey [inaudible].

[doors slams]

[silence]

BAILIFF HAYSLIP: Hey, [inaudible].

BAILIFF CHRISTOPHER COLINI: Okay.

BAILIFF HAYSLIP: Do you want [inaudible]? Thank you.

[silence]

[door slams]

[silence]

[1:09: 19] [Phone beeps]

[door slams]

[door opens]

[door closes]

[silence]

[door slams]

Female attendee 2: you're not done yet

[1:15: 44] BAILIFF HAYSLIP: Oh, we're going to have another one.

Female attendee 2: Our respondent number one.

[1:15: 47] BAILIFF HAYSLIP: I think Sullivan had a recording device on him [inaudible] important by the respondent.

Female attendee 2: Oh?

[1:15: 49] BAILIFF HAYSLIP: I know.

[door slams]

[1:15: 57] BAILIFF HAYSLIP:  I was in here doing my own stuff.

[1:15: 59] DEPUTY SPEERS: Wow. Hi.

[1:16: 05] Welcome back. I haven't seen you in forever.

DEPUTY SPEERS:I know.

[pause]

Female attendee 2: Are you [inaudible]?

[1:16: 14] DEPUTY SPEERS: I don't know. I got two envelopes for yah.

[1:16: 17] BAILIFF HAYSLIP: [inaudible]

DEPUTY SPEERS: [inaudible] I heard.

[laughter]

DEPUTY SPEERS: I heard all about the [inaudible], right?

BAILIFF HAYSLIP: What? [inaudible]. An increase of your [inaudible].

[1:16: 37] DEPUTY SPEERS: Yes. [inaudible] because we don't have evidence on Gipson [inaudible]. They had it disappear.

BAILIFF HAYSLIP:   What the hell? [inaudible].

DEPUTY SPEERS: So, I wanted him to open. See this one.

DEPUTY SPEERS: Open this one.

BAILIFF HAYSLIP:   Okay.

[1:16: 58] DEPUTY SPEERS: Whatever. I don't care about this [inaudible].

BAILIFF HAYSLIP: Um all right. [inaudible].

[door slams]

[1:17: 09] LIEUTENANT: BROGAN: What?

BAILIFF HAYSLIP: I'll find it.

BAILIFF HAYSLIP: You sound better.

LIEUTENANT: BROGAN: Is it this one?

BAILIFF HAYSLIP: I can't believe it.

LIEUTENANT: BROGAN: [inaudible] I started to believe so much Gipson is [inaudible].

BAILIFF HAYSLIP: Okay. That seems perfect.

[1:17: 13] LIEUTENANT: BROGAN: You don't understand it. Why don't you just- you need to

41

sit down, to calm down officer.

BAILIFF HAYSLIP: [laughter]

BAILIFF HAYSLIP:: So, you might want to sit down to understand [inaudible]. Perfect.

LIEUTENANT: BROGAN: [inaudible].

BAILIFF HAYSLIP: That's saying you [inaudible].

LIEUTENANT: BROGAN: [inaudible].

[1:17: 32] BAILIFF HAYSLIP: Yeah, and then, what do you do with all these statements for Mr. Sullivan?

LIEUTENANT: BROGAN: What I'll do with all the documents [inaudible]?

LIEUTENANT: BROGAN: Yeah. Okay.

[1:17: 38] BAILIFF HAYSLIP: Okay. So, do you understand it all?

[1:17: 42] LIEUTENANT: BROGAN: Yeah.

BAILIFF HAYSLIP: Okay.

DEPUTY SPEERS: Right there.

BAILIFF HAYSLIP: Okay.

LIEUTENANT: BROGAN: [inaudible]

BAILIFF HAYSLIP: [inaudible] would you start there?

LIEUTENANT: BROGAN: Do you want us to do that now?

[1:17: 49] DEPUTY SPEERS: I don't want to go back down there and make any [inaudible]

[laughter]

[1:17: 53] LIEUTENANT: BROGAN: Come on.

[1:17: 56] BAILIFF HAYSLIP: Hey hum Chris, there at case number four. He said and [inaudible] are also [inaudible].

BAILIFF HAYSLIP: Okay.

DEPUTY SPEERS: I can't [inaudible].

[1:18: 26] LIEUTENANT: BROGAN: I attended all of the [inaudible].

BAILIFF HAYSLIP: You'er going to need this.

LIEUTENANT: BROGAN: You need a number they have it [inaudible].

BAILIFF HAYSLIP: Mmmh.

LIEUTENANT: BROGAN: Do you have another one?

BAILIFF HAYSLIP : Okay. I have it. [pause] Here.

[silence]

LIEUTENANT: BROGAN: This is pretty good [inaudible].

[silence]

BAILIFF HAYSLIP: Maybe it suits them Uh, could you [inaudible] this?

DEPUTY SPEERS: : Yes, sure.

[silence]

LIEUTENANT: BROGAN: [inaudible].

[silence]

LIEUTENANT: BROGAN: We [inaudible] already.

DEPUTY SPEERS: What's the matter?

BAILIFF HAYSLIP: What's that about?

Female attendee 1: Why did he do that?

DEPUTY SPEERS: I don't seem to understand [inaudible].

LIEUTENANT: BROGAN: What are these? I don't seem to get it at all.

BAILIFF HAYSLIP: I know. It doesn't seem to [inaudible] but you don't need to worry about that [inaudible].

LIEUTENANT: BROGAN: : Alright.

43

[crosstalk]

[1:20: 45] BAILIFF HAYSLIP:  Okay. So, I thought about some things, and for the sake of 6-1-4-9, it entails that.

LIEUTENANT: BROGAN:  That one.

BAILIFF HAYSLIP:  [inaudible]

[crosstalk].

[door bangs]

[1:20: 57] BAILIFF HAYSLIP: Thanks for sending me that.

LIEUTENANT: BROGAN:  [inaudible]

BAILIFF HAYSLIP: Yeah.

LIEUTENANT: BROGAN:  [inaudible]

BAILIFF HAYSLIP:: Okay. All the best.

LIEUTENANT: BROGAN:  All right.

[door slams]

[door opens]

LIEUTENANT: BROGAN:  [inaudible]

BAILIFF HAYSLIP: [inaudible]

LIEUTENANT: BROGAN: [inaudible]

[door slams]

BAILIFF HAYSLIP: Mmmh. Okay.

BAILIFF HAYSLIP: I think we're done here.

BAILIFF HAYSLIP: He's in there.

Female attendee 1: [inaudible].

44

[1:21: 25]  [door slams]

[silence]

[stapler pins]

[1:22: 25]  [door slams]

Female attendee 1: [inaudible].

BAILIFF HAYSLIP: Mmmh.

BAILIFF HAYSLIP: [inaudible] Why would we [inaudible] this for?

[1:22: 25]  [door slams]

BAILIFF HAYSLIP:: [inaudible].

Female attendee 1: I know.

BAILIFF HAYSLIP:: This is good. [inaudible].

Female attendee 1: All right.

[1:23: 13]  [door opens]

[1:23: 15]  [door slams]

[silence]

Female attendee 1: [inaudible]

BAILIFF HAYSLIP:: Yes.

BAILIFF CHRISTOPHER COLINI: [inaudible].

Female attendee 1: [inaudible]

Male Attendee 3 [inaudible].

BAILIFF HAYSLIP: Mmmh.: I don't know [inaudible].

BAILIFF HAYSLIP : Court number [inaudible].

Male Attendee 3: You'll have to...

BAILIFF HAYSLIP: You'll have to cool down.

BAILIFF CHRISTOPHER COLINI: Okay.

[door slams]

BAILIFF HAYSLIP: Is it there or not?

BAILIFF CHRISTOPHER COLINI: I'll see. He did say that?

[door slams]

BAILIFF HAYSLIP: [inaudible]

[silence]

BAILIFF HAYSLIP : Export.

Female attendee : Okay.

[door slams]

[voice over receiver]

[door slams]

[phone ringing]

[pause]

[phone ringing]

[door slams]

[indistinct conversation]

Female attendee : Okay ma'am.

[silence]

BAILIFF HAYSLIP: He asked earlier. Yeah, we know [inaudible]

[silence]

[1:25: 35]  [phone calling]

[1:25: 40] BAILIFF HAYSLIP: Hey. I'm working on it right now. Are you okay? [inaudible] All right.

[crosstalk]

[1:26: 08] [door slams]

BAILIFF COLLINI: Sorry. [inaudible] Are you recording [inaudible]

[1:27: 08] BAILIFF HAYSLIP: a damaged recording device? Are we all with that? Are you recording?

[1:27: 39] MAGISTRATE RUEHLMAN: I am not sure if it's being recorded or not. [inaudible].

BAILIFF CHRISTOPHER COLINI:: I want to say its responsibility [inaudible].

BAILIFF CHRISTOPHER COLINI: I get that.

MAGISTRATE RUEHLMAN: Well.

BAILIFF CHRISTOPHER COLINI: Okay.

[1:27: 54] MAGISTRATE RUEHLMAN: Do that. [inaudible] take pictures [inaudible] recordings. The recordings [inaudible].

Male Attendee 3: For the documents?

[1:28: 10] MAGISTRATE RUEHLMAN: Yeah. This is what we're able to find.

BAILIFF CHRISTOPHER COLINI: For those documents brought up to [inaudible] being charged with [inaudible].

[1:28: 13] MAGISTRATE RUEHLMAN: You should have told us that earlier.


[door opens]

[door slams]

Male Attendee : [inaudible]

BAILIFF HAYSLIP: Yes.

Male Attendee : [inaudible].

47

Female Attendee : [inaudible].

[indistinct talk]

Female Attendee : [inaudible].

[indistinct talk]

BAILIFF HAYSLIP: Okay.

Female attendee : Overhearing [inaudible].

Male Attendee : [inaudible]

[indistinct conversation]

Male Attendee : Hey.

[crosstalk]

Male Attendee : I referred eight [inaudible]

Female attendee : Hold on, I need to take care of them.

Male Attendee : Something [inaudible] that much. [inaudible]

Female attendee : Yeah.

Male Attendee : I need to tell you all [inaudible]. Unfortunately, that's not what I'm talking about man.

[door slams]

Female attendee : [inaudible]

[laughter]

Male Attendee : [inaudible]. How about if I ask?

Female attendee : What do you want to ask?

Male Attendee : [inaudible].

[door knock]

Female attendee : All right.

Male Attendee : So, we [inaudible].

[crosstalk]

[132: 29] MAGISTRATE RUEHLMAN: What is Jackson like? We know what it means for Jackson.

Male Attendee : I know [inaudible].

[crosstalk]

Female attendee : Yes.

Male Attendee : I showed it to them [inaudible].

Female attendee : And then what?

[crosstalk]

Male Attendee : This really looks [inaudible].

Female attendee : Standard [inaudible] partner and such.

Male Attendee : [inaudible]. Let's, let's...

Female attendee : Let's confirm it.

Male Attendee : Yeah.

Female attendee : [inaudible]

[crosstalk]

Female attendee : Like I don't want this [inaudible].

Female Attendee : Yeah. All right.

Male Attendee : If you check with this [Inaudible], you can never...

49

Female attendee 1: You can never?

Male Attendee : [inaudible].

Female attendee : I get it. [pause] Okay.

Male Attendee : Are you good?

Female attendee : I don't know how I can say that.

Male Attendee : Yeah.

Female attendee : Yeah. I needed this first [inaudible] for bringing all these [inaudible].

Male Attendee : Oh.

Female attendee : I think I understand.

[door opens]

[crosstalk]

Female attendee : Yeah.

[crosstalk]

[door slams]

Male Attendee : Yes, try that.

[crosstalk]

Female attendee : Really?

Male Attendee : [inaudible].

[indistinct talks]

Female attendee : You're right. You're asking for answers [inaudible].

[indistinct talk]

Female attendee : Okay. You're asking us to use some of this [inaudible].

Male Attendee : Okay.

Female attendee : [inaudible]

[crosstalk]

Male Attendee : [inaudible]

Female attendee : Oh.

[indistinct talk]

Male Attendee : Hey, do you have any [inaudible]?

Female attendee : Sorry.

Male Attendee : Don't you get that right now?

Female attendee : Find out how to get me that again.

Male Attendee : [inaudible]

Female attendee : Please come back.

Male Attendee 1: Okay.

Female attendee : I'm just going to [inaudible].

[1:38: 18] BAILIFF COLLINI: I was waiting to see it. We don't have a blank copy of the [inaudible]?

MAGISTRATE RUEHLMAN: Okay. Thank you for the [inaudible] and support [inaudible].

Male Attendee 2: Yeah.

Male Attendee 1: Did you [inaudible]?

Male Attendee 2: Yeah.

Male Attendee 1: Did you start [inaudible]?

51

Male Attendee 2: Yeah, yeah. Sure.

Male Attendee 1: Honestly, [inaudible]

[door slams]

Male Attendee 2: Yeah, I want to slice it [inaudible].

Male Attendee 1: [inaudible] if it's true. [inaudible].

Female attendee 1: I need copies, please.

Male Attendee 2: Yeah, we got all the copies. All we have to do, I think we're going to see that we have a backup for all of them.

Male Attendee 1: All right. You're getting us all that?

Male Attendee 2: Yeah.

Male Attendee 1: So, we're going to [inaudible].

[door slams]

Male Attendee 1: I need to show that all [inaudible]

Male Attendee 2: Okay. Okay.

Male Attendee 1: Are you all listening to what she's saying? So now, why bother with [inaudible]?

MAGISTRATE RUEHLMAN:: Because every time my wife [inaudible] so once she starts [inaudible].

Male Attendee 1: Who's she to you?

[1:38: 32]MAGISTRATE RUEHLMAN: My wife. She [inaudible]. One day she [inaudible] and every Saturday.

[door slams]

Male Attendee 2: [inaudible].

Male Attendee 1: Did she [inaudible]?

52

Male Attendee 2: Yeah. She [inaudible]. Do you have an idea why [inaudible]?

Female attendee 1: I thought you.

Male Attendee 2: She said you have to feel the feminity of the females.

Male Attendee 1: [inaudible].

Male Attendee 2: Yeah.

Male Attendee 1: [inaudible].

[crosstalk]

Male Attendee 2: My wife [Inaudible] contract work [inaudible].

Male Attendee 1: So, what's wrong with [inaudible]?

Male Attendee : Yeah. [inaudible].

[1:40: 36] BAILIFF HAYSLIP: Okay. Here is a copy of the [pause] [inaudible]. I don't know the number [inaudible].

Male Attendee : Yeah.

BAILIFF HAYSLIP: Okay, do you have a [inaudible]?

BAILIFF COLLINI: Okay.

BAILIFF COLLINI: We are good.

BAILIFF HAYSLIP: All right.

Male Attendee 2: [inaudible].

Female attendee 1: You too. Let's get you out of here. [inaudible] alright.

BAILIFF COLLINI: [inaudible].

BAILIFF HAYSLIP: Oh, see you forgot [inaudible] I don't have to [inaudible] that either.

Male Attendee 1: Okay.

53

BAILIFF HAYSLIP:: All right. You [inaudible].

Male Attendee 1: All right.

[1:41: 39] BAILIFF HAYSLIP: [laughter]

Female attendee 1: All right.

Male Attendee : [inaudible].

Female attendee : [inaudible].

[silence]

[Background conversation]

[silence]

[1:54: 20] BAILIFF HAYSLIP: Hello.

Male Attendee: [inaudible].

BAILIFF HAYSLIP: He just left. [inaudible].

Male Attendee : [inaudible].

BAILIFF HAYSLIP:: I think your [inaudible] is up here.

Male Attendee : [inaudible].

BAILIFF HAYSLIP: I don't know how to [inaudible].

Male Attendee: [inaudible].

BAILIFF HAYSLIP: Okay. Then you are?

Female Attendee: 45.

Male Attendee: 45.

[door bangs]

[door bangs]

BAILIFF HAYSLIP: Hi. [inaudible] left for the day.

Female Attendee: I am sorry.

[2: 02:43] BAILIFF HAYSLIP: The judge has left for the day.

Female Attendee : We'd he gone to?

[laughter]

[2: 02:55] BAILIFF HAYSLIP: I love it but I just spend all the time thinking as a [inaudible]. So he's very happy right now. He got a new phone.

Male Attendee: [inaudible].

[2: 03:04] BAILIFF HAYSLIP: I know. I downloaded all the apps for him.

Male Attendee: There's gotta be kind of somewhere [inaudible].

BAILIFF HAYSLIP: Oh, yeah. He said I don't understand, why they held on to this stuff.

Male Attendee: But I know I have support from my parents.

[2: 03:22] BAILIFF HAYSLIP: Right. I am sorry guys. I think Judge Brandon[?] is here. ?

Male Attendee: [inaudible].

[2: 03:39] BAILIFF HAYSLIP: I don't know. No one has told me anything. I have been apple support today.

[laughter]

Male Attendee: [inaudible].

[2: 03:45] BAILIFF HAYSLIP: Do you think alike?

Male Attendee: No [inaudible].

[2: 03:45] BAILIFF HAYSLIP: Oh, I thought I was the host.

Male Attendee : [inaudible] right now?

[2: 03:52] BAILIFF HAYSLIP: Right now? No. Wednesday. I am sorry.

Male Attendee: It's all right. Thank you.

[2: 04:11] Thanks. Be safe.

[2: 05:01] Sullivan's phone rings: [music beats]

[2: 06:30]  :  Have you guessed that weren't for us? Here he comes.

[2: 06:42]  BAILIFF HAYSLIP:: All is good. All right thanks.

[Silence]

[Backgroud Noise]

[Silence]

[Loud Banging]

[Background conversation]

Female Attendee: You've done this? Oops sorry, that wasn't me.

Female Attendee: There is something you can get?

Female Attendee: Yea.

[2: 09:37] BAILIFF HAYSLIP: What are you doing there? Are you working today ?

Female Attendee: Uh-huh

[Silence]

[background conversation]

[laughter]

[Silence]

Female Attendee : Hello.

[background conversation]

[laughter]

[background conversation]

[2: 10:52] BAILIFF HAYSLIP: The judge is already gone for the day.

Female Attendee : All right.

Female Attendee : [inaudible].

[2:15:46] BAILIFF HAYSLIP: I think Beridon is here in 485.

Female Attendee: Okay.

[2: 15:51] BAILIFF HAYSLIP: And I think that's it Nestor possibly. I am sorry. [laughs]

Female Attendee: [inaudible].

[2: 16:09] BAILIFF HAYSLIP: You know that I leave my floor. But he is 540. He's [inaudible].

Female Attendee: Thank you.

[2: 16:14]: BAILIFF HAYSLIP: You're welcome to be safe.

[door closes]

[laughter]

[door closes]

Female Attendee : [inaudible].

[2: 18:29]: BAILIFF HAYSLIP:: Yes 50. I think I have something too.

[2: 18:39]: [phone rings]

[2: 19:28]: BAILIFF HAYSLIP:Is that [inaudible]? I know nothing else. I don't know what I am supposed to [inaudible].

Female Attendee : It'll be so well [inaudible].

Man on the phone: [inaudible].

BAILIFF HAYSLIP: It's 201 [inaudible].

Man on the phone: Yeah. They can [inaudible].

BAILIFF HAYSLIP: Okay.

Man on the phone: You're all finished?

BAILIFF HAYSLIP: And now I have a [inaudible].

[2: 20:25]: BAILIFF HAYSLIP: No she's just [inaudible].

background conversations]

[2: 20:55]: BAILIFF HAYSLIP: Like I said [inaudible]. No, I do for all of them. Yeah, you're right.

[background conversation]

BAILIFF HAYSLIP: Hello.

Male Attendee: is the Judge here

BAILIFF HAYSLIP: he is gone for the day we do apologize.

Male Attendee: Okay. Fine.

BAILIFF HAYSLIP: Yeah.

Male Attendee: [inaudible].

[2: 24:41]: BAILIFF HAYSLIP: I think just judge Beridon here and......

Male Attendee: [inaudible].

BAILIFF HAYSLIP: Oh, I am sorry. I have been just well.

Male Attendee: No, no. That's fine.

[2: 24:43]: BAILIFF HAYSLIP: I can imagine especially with the three weekend coming up

Male Attendee: Yeah. Fine.

BAILIFF HAYSLIP: [inaudible].

[silence]

[2: 35:14]: BAILIFF HAYSLIP: Hi.

Female Attendee: [inaudible]

[2: 35:16]: BAILIFF HAYSLIP: Oh, she at lunch  [inaudible] Okay or anything?

Female Attendee: No.

[2: 35:25]: BAILIFF HAYSLIP: Okay. All right. Have a good life.

[silence]

[background conversation]

[2: 44:17]: BAILIFF HAYSLIP: Hi.

[2: 44:18]: Male Attendee : hi.

[2: 44:19]: BAILIFF HAYSLIP: I am sorry, the Judge is gone.

Male Attendee : [inaudible].

[2: 44:28]: BAILIFF HAYSLIP: I think Beridon and Nestor

Male Attendee : Okay.

[2: 44:45]: BAILIFF HAYSLIP: Beridon is 485 and Nestor is 540

[inaudible conversations]

Male Attendee : [inaudible].

[2: 45:59]: BAILIFF HAYSLIP: Hold on [inaudible]. You're right. You're right.

[inaudible conversations]

[2: 46:41]: BAILIFF HAYSLIP: That is all I can see. [inaudible].

[phone rings]

[2: 47:05]: BAILIFF HAYSLIP: You're fine. Okay. That's okay.

Female Attendee : [inaudible].

[background conversation]

[2: 47 51]: BAILIFF HAYSLIP: and that's my only number. 946-xx 21.

Female Attendee 1: Thank you. [inaudible] sorry.

[door bangs]

BAILIFF HAYSLIP: Sorry. I am sorry I didn't know but he can probably [inaudible] to get back here. [inaudible]


BAILIFF HAYSLIP: You're fine.

[2: 50 28]: Male Attendee: I'm not going to be sorry if I have an excuse. [inaudible]

[2: 50 31]: Joanne: No. I said it yesterday, the hearing is over and I got nothing. And I said, meet me at Redbox. I said to meet at Redbox. She said at the bend. I said we just have a record. I said, the judge is done with the hearing? That's what I said. So I thought, he was done with the hearing. And that's what you came down there for. So, what...

[2: 50 58]: Male Attendee : What I read is that the suspect is here. I can't take it for granted, you know, that thug[?] was here. I-, I wrote back to his [inaudible].

[2: 51 07]:Joanne: File that case. You know, you're just going to end up with anything for it. Statements, like, argue it or anything like that?

[2: 51 12]: No, nothing's playing. It was like 30 seconds.

[2: 51 07]:Joanne: Dan.n it. Oh, there you go. It was 30 seconds.

Male Attendee 1: A backup is just for convenience.

Joanne: Then I have to explore.

Male Attendee 1: That's you, that's your ticket punched.

[2: 51 32]:Joanne: [background noise] That was not my fifth last lunch, but everybody wants to have a last lunch.

Male Attendee 1: If you're thinking about your fifth last one...

[2: 51 36]:Joanne: You know what, everybody wants to have a last lunch. I can't help. I've worked down here for 20 years. What do you want me to do?

Male Attendee 1: This is what I feel.

[2: 51 44]:Joanne: You know how I am about free lunches and free food.

[pause]

[background noise]

[2: 52 26]: [woman singing]

[background conversations]

What?

[2: 52 57]:Joanne: If I had those [inaudible].

Male Attendee 1: I think it is beautiful.

Joanne: Yeah.Not beautiful you said [inaudible]

[background noise]

Male Attendee 1: [inaudible] See if it brings us [inaudible]. You don't have to worry about it.

[2: 53 11]: Joanne: Yeah.

[2: 53 21]:Male Attendee 1: [Inaudible] script.[ laughs]

Joanne: Tell me you aren't lying.

[2: 53 27]: Male Attendee 1: [inaudible] the fact. [laughs]

Joanne: Ooh

Male Attendee 1: It was beautiful.

Joanne: Wow

Male Attendee 1: I think it's your right hand.

Joanne: Oh

Male Attendee 1: And I don't appreciate it. I don't have enough of it, okay?

Joanne: [Laughs]

[pause]

[2: 54 07]:Male Attendee 1: So I'm just-It will be well here, okay. Because she said he wanted a-I can't remember exactly what she said. She said, "I still didn't know how you afford to pay [inaudible] back. Because you are considering only 3D appropriate, which she stated was a gift, anyway." She brought receipts for the living room, and bedroom furniture and I submitted a response so that I can convince them.

[silence]

[2: 54 10]: Joanne: No, Sir you did not.

[2: 54 13]: Male Attendee 2: My case was here, filed by a different judge. And I have a receipt. I was worried that my case needs to be reinstigated. That I'd like you to kindly [background noise] to help [?]. Before you intentionally got it all wrong.

[2: 54 10]: Joanne: We [inaudible]

Male Attendee2 : [inaudible] at all.

[background noise]

Male Attendee 1Uh, okay.

[background noise]

Male Attendee 2: If then, that was worth it.

Joanne: That [ inaudible]

Male Attendee 2: If you focus on it both sides, I found out that the configuration[?]

[background noise], and, and any other lead... I write it down. The day they need to file the configuration... [background noise].

That's a good monument. And, uh, look at...You're able to go? [background noise] You are appearing tired.

Joanne: Yeah I'm...

Male Attendee 2: You are tired.

[background noise]

[pause]

[2: 57 19]: Joanne: Oh, I'm sorry. I have the wrong phone number. Is this Cincinnati Bell [?]. Uh oh, this is just an observation.

[2: 57 21]: Joanne: Okay.

[keyboard sounds]

Joanne: Okay. Mm-hmm. Oh, I just hope that number has a [inaudible]. I want to devise a full alarm with that thing.

[2: 57 52]: Joanne: Uhh, [foreign word], behind the structure of the data demo, there is something like that's [background noise] in Spanish, which I doubt the Americans understand.

[2: 58 12]: Joanne:: Okay then.

Joanne: Okay.

[background noise]

[2: 58 15]: Joanne:: Thanks I appreciate it.

[background noise].

Joanne: Right, all right.

[background noise]

[pause]

Male Attendee 1: Mmm, I can't get you if you don't speak English.

Joanne: Hold on.

Male Attendee 2: I'll break it to [inaudible]

Joanne: Fine, find a way. Hold on, see [inaudible].

Male Attendee 2: Did you access it?

[woman laughing]

Joanne: All right, I slide it.

Joanne: And now, what are you doing?

Joanne: I am to catch service at FNA calls.[background conversation] I called the line, uh, and they are currently busy. I can't [inaudible]. But, I have a, uh, I have Paygami, cost the same value on my contact.

You know, it says that, on the line, 'spend all expense of $40.91", and then "one-time charge of $25 a month. Again the prices [inaudible].

Man 1: Does the money have a language sign?

[pause]

[3: 01 40]: Joanne: Um, the total amount of monthly expenses stands at $40 and $90, yeah. Oh, $90 and, 59 cents. Oh, yeah, $90.59.

Male Attendee 1: If both sides have their [inaudible], did it for a while, and should be for be my dad [inaudible]. Because I can afford to pay for him.

Joanne: What are we talking about?

Male Attendee 1: The money I gave her to be a guarantee not to work, more than $15.

Joanne: Which one is that though?

Joanne: I remember when I was-I had migrated from an English town, and I wanted to work then, secretly.

[background conversation]

64

Joanne: Yes. Uh.

[3: 02 36]: Joanne: Joanne: My room service [inaudible] and didn't want to pay for the Internet. And when I click on the internet, it says, "buffering [inaudible] Internet, Fiber net, and VTL". And then more information etc. But they are nothing on it that says that I want it.

[Background conversations continue]

[3: 03 01]: [ phone rings]

[pause]

Joanne: And so why was that part where you were charged differently from the one that is on the contract? Is that the one that...

Joanne: So I got this email that wants my [inaudible] from me.

Joanne: How were they charging?

[3: 04 00]: Joanne: $ 5.35.

[background conversation].

Joanne: It says totals on one-time, and the one they have emailed me, 'one-time charge total $45.90.

[Background conversation].

Joanne: It's a one-time charge service. That was everything together with the $45.90.

[Background conversation]

[background noise]

[3: 05 33]: Joanne: The prorated charges I have on my email that was sent to me on Tuesday, January 5th, that the prorated charges were $5.05 for activation.

[woman laughs].

[3: 05 35]: Joanne: Now, when I set this up, I asked the guy instead this $40.91 gonna pay for the setup? He said, "yes." And I said, "give me the $5.30 back then." I have to be patient with him.

Joanne: Yes.

[woman laughs]

[3: 05 58]: Joanne: So I never pay that again. I said, so the combined too, that is my total for my first bill. And he said, yes. And then I get a bill and it's higher.

[Background conversation]

[3: 07 15]: [Phone rings]

[3: 07 24]: Joanne: I am not going to answer that one.

Automated Voice: The number that you are trying to reach [inaudible].

[background conversation]

Male Attendee : [inaudible] She will be approved.

Joanne: Excuse me, sir, I beg your pardon.

Male Attendee 2: Fine. She was out of Indiana, and she called me up. When I see the [inaudible] and the guy is going to exploit her looking for cash.[inaudible]

Joanne: Says that my final monthly charges be at $40.91, correct?

Male Attendee 2: Uh, I'll give you [inaudible].

Joanne: Okay. Right.

Male Attendee 2: Surveillance is fine. I can't find the figures off the till. It had like $50 or so.

Joanne: You're right, right. Okay. I just want to make sure though that, like I will [inaudible] every month having a request.

Male Attendee 2: Didn't she [inaudible]? She didn't involve you?

Joanne: No.

Male Attendee 2: [inaudible].

Joanne: Okay. Just do everything.

[background noise]

[door slamming]

[background conversations]

Female Attendee   : That is awesome.

Male Attendee 2: [laughs]

Joanne: Oh, this guy was recording you.

Male Attendee 2: Was he?

Joanne: Mm-hmm.

Male Attendee 2: You are kidding

Joanne: Yeah he was recording.

Male Attendee 2: What's your pretty guess?

Joanne: Mm-hmm?

[pause]

[background conversations]

Male Attendee 3: All this time?

[3: 10 52]: Joanne: No, just for 24 minutes, I guess, until, uh...

Female Attendee 2: Until you took in.

Joanne: Yeah.

[3: 10 59]: Male Attendee 2: It was not 24 minutes ago exactly.

Joanne: He just sat here for a while. It was probably from the time they said you were going upstairs to when [inaudible] [?] came.

[3: 11 07]: Male Attendee 2: Can we play it back?

[3: 11 09]: Joanne: Yeah. We sure can.

[pause]

Female Attendee 3: Is that number...

[3: 11 52]: Male Attendee 2: Are the boys and lawyer going to come out and take these phones and try to get some information at it?

[3: 11 54]: Joanne: I think so. They all [inaudible]

[pause]

[background noise]

[door slamming]

Male Attendee 2: Just different text messages. He's there like where he wants.

[pause]

Male Attendee 2: Would you feel bad if I go through some of these? Private personal paper work

[3: 12 47]: Joanne: no

[3: 12 48]: It's all for work. It's all for work.

[3: 12 57]: Joanne: Oh my God. Where's the fucking phone.

Male Attendee: I'm coming back, [inaudible] might be seen now.

Male Attendee: What do you see?

[3: 13 16]: Joanne: was rock hard for hours. Wow. Pictures of erect penises.

: Hmm!

[3: 13 25]: Male Attendee: Mm, and another, I was rock hard for an hour. Watching alone like porn.

[background noise].

Joanne: It's just disturbing.

68

Male Attendee 2: They kept our numbers too, Moore.

Joanne: What do you mean? Did they keep our numbers?

Male Attendee 2: Our numbers, our numbers. Uh, 15 and 16.

Joanne: Oh, you mean work cards?

[pause]

[keyboard typing sound]

[Phone rings]

Tara: Hey, Joanne.

[background noise].

[3: 14 22]: Joanne: Wow, Tara. Yeah. Today.

[pause]

[3: 15 21]: Joanne: Okay, I have the phone in here, and, um, he confiscated his cell phone and I found out as his phone keeps like going off and I want to like turn the volume down on it and turn it off or whatever.

[3: 15 41]: No, I didn't answer it, but, um, he had an audio, audio recorder pulled up on his phone, yeah. I figured being held in contempt. He was recording all that.

Male Attendee 2: Have you tried turning that cell phone off? Did you find anything?

[3: 15 45]: Joanne: No, this was like, he was downstairs acting like an idiot, so.

Tara: And they reached your file?

[3: 16 08]: Joanne: He was downstairs not talking, again. So they brought him up here, and he was like, "Uhh, a form of equity in here". Okay, and then when I caught his phone up...

Tara: Uh...

[3: 16 11]: Joanne: it had an audio recorder on it. That was already put up. And then when they arrested him, they found a body CAM video. Like he had a whole-body CAM thing.

Tara: Okay then.

Joanne: Yeah. Oh, he and his friend were very fucking crazy. His friend was downstairs informing Sheriff's deputies and staff.

Tara: Mm-hmm

[3: 16 31]: Joanne: They ain't people who appraise and they've just passed a new ordinance that said that there are to be, there's to be no filming whatsoever in the courthouse. Yeah.

[3: 16 40]: and, they think they can still come down I guess. So, yeah. We had an so the judge gave him an additional 30 days for doing the GoPro.

[background noise]

[3: 16 08]: Joanne: And Uh-hmm, his friend who was recording in here. He refused to admit that he was recording and the judge said, you're under oath that you have sworn. He said, " then you're under oath".

[3: 17 15]: Joanne: He said, uh, "if I have to practice that open and search it, to search it. To get searched for the court put it torchlight on my website right now. You're going to be prosecuted for a felony in this courthouse. He said, "once you turn me into [inaudible], you could take quite less time and tell me right now if you're recording. Okay, you are? Or, we can do it the hard way and you're going to get prosecuted for a felony.

Joanne: Right. I was like, oh, [inaudible] I disappointed you.

[pause]

Joanne: Whoa. Yeah, I mean the fortune has been passed. I'm just here to say goodbyes today. Yeah. I'm not like really here, here.

I really really work here. Like-you're like, uh, okay, I have a question about Emerge. They sent us a bill for costumes for like $350, and they said it was seeking of $58.

[background noise]

Joanne: So, I don't just have like, I don't have any fucking idea like what can I do?

Tara: Is this fucking new? What have they complicated? My invoice is fucking clear. They [inaudible] of my job.

70

Joanne: Well, they are saying it's [inaudible].

Tara: I'm sorry about that.

Joanne: And they could actually have signed every all extra [inaudible] in full of providence. But it looked as though no costume package payment that they made. 6 package payments accumulated over to $348.

I was like 3 fucking 48 dollars; for what? For one fucking costume? You're going to delay costumes. So, you're telling me we bought two fucking costumes for 350 fucking dollars. And, and the costumes get used in their Christmas camp, then they borrowed and we gave back.

So Mike, is this the end of your recital? And then you act like you buying 3 million and 50 dollars fucking costumes?

We just do, I don't know because my husband paid for it. But we pay, it says, so you all had paid tuition in school in August. So I guess he told them like, we'll pay for the entire year upfront.

I mean, I'm not trying to be super fucking difficult, but I don't want to spend 700 fucking dollars on two costumes. That's ridiculous.

[background noise]

Joanne: A costume? You know, looks like Sharon looked into it and, and still want to seek $350 or something. Because I'm like, I, I, I told this to Drew. I said, you know, "I can understand for like this level of classes, $60 for a costume. I don't ever don't even see them honestly.

[background noise]

Joanne: This is not going to make for all that fucking price. Do you think both have one or one of them?

[pause]

Joanne: This is why I have my fucking husband to do this shit. Because I know I was going to be stuck on the fucking shit bag at the end. He was like, "well then I'll do dance on myself". And I'm like, "that's fine. You fucking do it."

Then I get these fucking emails. And he is like, "well, I don't know what's going on" and I'm like, "yeah because you were never paid for it ".

[3: 22 50]: "You, you should just let me fucking handle this shit. But you want to get into a private [inaudible]. Can you go and be a fucking dancer.

[background sound]

[Pause]

Joanne: Oh my God. They're never going to be able to fill that.

[pause]

[3: 24 07]: [phone ringing]

[background noise]

Man 6: [inaudible]. Right.

[background noise]

Male Attendee 6: Okay. What's wrong with her?

[background noise]

Male Attendee 7: You want to sample this?

[END]

I James Sullivan requested everything be recorded under Per Sup. R 10 Recording devices. Proceedings before any court and discovery proceedings may be recorded by stenographic means, phonogramic means, photographic means, audio electronic recording devices, or video recording systems. and witness Sargent Dryer: ordered BAILIFF HAYSLIP: to seize a recording device and thereafter "Subsequent to the court's transcription." 72 pages, and that the foregoing transcript of proceedings is a true, complete, and accurate transcript of what I witnessed at On January 15 2021

1000 Main Street Cincinnati Ohio room 300. BAILIFF CHRISTOPHER COLINI and JUDGE RUEHLMAN, JUDGE HEEKIN: were the main trespassers.
The other co-conspirators BAILIFF HAYSLIP DEPUTY: SPEERS. BAILIFF HAYSLIP LIEUTENANT BROGAN: SARGENT: DRYER Joanne:
[54 12] BAILIFF CHRISTOPHER COLINI: do you want me to write up the contempt papers.
[54 15] JUDGE RUEHLMAN: We'll do that right now.

I left in handcuffs at approximately
[54 10] from the sham process. The shams Courts transcript date was changed to February 15th to make it appear like it was a lawful hearing then a trial, the sham is now to keep Gipson and Sullivan from entering the court.

JUNE 26 2023

On January 15 2023

IN WITNESS WHEREOF By: _____

James Sullivan

Void where prohibited by law, all rights reserved James Sullivan

JUNE 26

I hereunto set my hand this 2nd day of December, 2023.

Respectfully submitted: James Sullivan

James Sullivan C/O,
3556 Wilson Ave
Cincinnati Ohio [45229]
**Ohio**
**County Hamilton**

Void where prohibited by law, all rights reserved James Sullivan

CERTIFCATE OF SERVICE

I hereby certify on this day March JUNE 26 , in the year 2023, a true and accurate copy of the foregoing Motion. Notice of filing will be sent to all parties by operation of the courts electronic filing system. Parties who are not served via Court's electronic filing system, copies will be mailed USPS to other parties.

AUTOGRAPH BY:_____ James Sullivan

73